United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 28, 2005**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 03-31198
_____

WENDY RENEE BENNETT-NELSON; JOY MARIE BOYKIN,

                              Plaintiffs - Appellants,

                    versus

LOUISIANA BOARD OF REGENTS, Etc.; ET AL.,

                              Defendants,

LOUISIANA BOARD OF REGENTS, also known as University of Louisiana
System Board of Trustees, also known as University of Louisiana
System; STATE OF LOUISIANA; WILLIAM CARVEL FOWLER, Individually;
BOARD OF SUPERVISORS FOR THE UNIVERSITY OF LOUISIANA SYSTEM,
formerly known as Board of Trustees, doing business as Louisiana
Tech University

                              Defendants - Appellees.

_____

Appeal from the United States District Court
for the Western District of Louisiana, Shreveport
USDC No. 5:01-CV-2166
_____

Before JOLLY, HIGGINBOTHAM and JONES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Two hearing impaired students at Louisiana Tech University
("the University"), Wendy Renee Bennett-Nelson and Joy Marie Boykin
("the appellants"), brought this action under Title II of the
Americans with Disabilities Act of 1990 ("ADA") and § 504 of the
Rehabilitation Act of 1973. The appellants alleged that the
University denied them equal access to education by failing to

provide educational aids and services, such as sign language interpreters and note takers, in a timely and effective manner. The district court dismissed the appellants' claims, holding that they were barred by the immunity from suit in the federal courts granted to Louisiana by the Eleventh Amendment.

On appeal, the appellants contend (1) that the University has waived its immunity from suit under § 504 of the Rehabilitation Act by accepting federal funding; and (2) that Congress has validly abrogated Eleventh Amendment immunity from suit under Title II of the ADA. We agree that the University, as a recipient of federal financial assistance, has waived its Eleventh Amendment immunity. We therefore need not go further to address the abrogation issue. Accordingly, we REVERSE and REMAND for further proceedings.

I

The facts of this case are uncomplicated and largely undisputed. Louisiana Tech University is a public university governed by the Board of Supervisors for the University of Louisiana System. Although its main source of funding is the State of Louisiana, the University also distributes approximately twenty-one million dollars in federal financial aid to students each year. The University's primary sources of federal funds are the Federal Work Study program and the Pell Grant program.

The appellants were enrolled as full-time students at the University. Because of their hearing impairments, they requested that the University's Office of Disabled Student Services provide

2

certain accommodations.  In particular, the appellants requested sign language interpreters and note takers for the classes in which they were enrolled, as well as certain study aids.

Before the district court, the appellants alleged that, although the University did provide the requested assistance "on rare occasions", it routinely failed to do so.  Thus, the appellants contended, the University failed to make reasonable accommodations for their disabilities, as required under Title II of the ADA and § 504 of the Rehabilitation Act.  See 42 U.S.C. § 12131(2); 28 C.F.R. § 42.521(a).  The University responded that the accommodations it provided were adequate, and that Louisiana's Eleventh Amendment sovereign immunity barred the appellants' claims.

Upon a motion by the defendants, the district court dismissed all of the appellants' claims against the Louisiana Board of Regents, the Board of Supervisors for the University of Louisiana System, the University, and the State of Louisiana (hereinafter, collectively, "the Louisiana appellees"), holding that these claims were barred under the Eleventh Amendment.[1]  Specifically, the court held (1) that Congress did not validly abrogate Louisiana's

---

[1] The district court also dismissed the appellants' Louisiana state law claims as insufficiently pled.  See FED. R. CIV. P. 8(a). Normally, dismissal for failure to satisfy the requirements of Rule 8 is without prejudice, and we find nothing in the district court's memorandum ruling to indicate that it intended otherwise.  Thus, as the appellants are free to reassert their state law claims on remand, we need not decide whether dismissal of said claims was in error.

3

sovereign immunity via either Title II of the ADA or § 504 of the Rehabilitation Act; and (2) that the University had not waived its immunity from suit under § 504.  This appeal followed.

II

The sole issue before us is whether Louisiana's Eleventh Amendment sovereign immunity bars the appellants' claims under the ADA and the Rehabilitation Act.  Our review is de novo.[2]  Our inquiry begins, as always, with the text of the Amendment.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  As we explained in Pace v. Bogalusa City School Board, the core function of the Amendment is to bar the authority of federal courts to litigate suits brought by citizens against the states.  See 403 F.3d 272, 276 (5th Cir. 2005) (en banc).  Although, by its express terms, the Amendment "bar[s] only federal jurisdiction over suits brought against one State by citizens of another State or foreign state",[3] the Supreme

_____

[2] The State moved for dismissal under FED. R. CIV. P. 12(b)(6) and 12(c).  We review dismissal under either rule de novo, applying the same standard as the district court, and asking whether "it appears certain that the plaintiff cannot prove any set of facts ... which would entitle her to relief".  Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough, 354 F.3d 348, 351 (5th Cir. 2003).

[3] Id.

4

Court has long held that it also precludes jurisdiction where, as here, a citizen brings suit against her own state in federal court.[4]  See Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267-68 (citing Hans v. Louisiana, 134 U.S. 1 (1890)).

There are two exceptions to the rule of sovereign immunity. First, a state may waive its immunity by consenting to suit.  See, e.g., Coll. Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999) (citing Clark v. Barnard, 108 U.S. 436, 447-48 (1883)).  Second, Congress may abrogate state sovereign immunity pursuant to the enforcement power conferred by § 5 of the Fourteenth Amendment.  See id.  The appellants contend that the University -- and by extension, the remaining Louisiana appellees -- have waived their immunity from suit under § 504, and that Congress has validly abrogated state sovereign immunity from suit under Title II of the ADA.  We address these contentions in turn.

A

The appellants first contend that the University has waived its Eleventh Amendment immunity from suit under § 504 of the Rehabilitation Act by accepting federal financial assistance. Section 504 provides that:

> No otherwise qualified individual with a
> disability  in  the  United  States  ...

---

[4] Further, the Eleventh Amendment protects "state agents and state instrumentalities" as well as the states themselves. Regents of Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997).

5

shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance ....

29 U.S.C. § 794(a). A separate provision, 42 U.S.C. § 2000d-7, conditions a state's receipt of federal funds on its waiver of Eleventh Amendment immunity to actions under § 504.[5] Our task, then, is twofold. First, we must decide whether the University is a "program or activity receiving federal financial assistance" within the meaning of § 504, such that the waiver condition found in § 2000d-7 applies. If it is, we must determine whether, under the multi-factor test set forth in South Dakota v. Dole, 483 U.S. 203 (1987), the condition represents a constitutionally permissible exercise of Congress' spending power.

1

The Louisiana appellees contend, and the district court agreed, that the University is not a "program or activity receiving Federal financial assistance" within the meaning of § 504, and thus, does not fall within the waiver provision of § 2000d-7. As a preliminary matter, we note that a "program or activity" is defined as "all of the operations of ... a college, university, or

---

[5] 42 U.S.C. § 2000d-7 provides that "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 ... or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance".

other postsecondary institution, or a public system of higher education ... any part of which is extended Federal financial assistance". 29 U.S.C. § 794(b)(2)(A). Thus, the precise question before us is whether the University –- that is, any department or other subdivision of the University -- is a recipient of federal funds.

The University concedes that enrolled students "receive federal funds earmarked for educational expenses". In particular, the University's Director of Student Financial Aid testified that the University receives "somewhere in the neighborhood of twenty-one [to] twenty-two million dollars" in federal financial aid annually. A significant portion of this aid comes from the Federal Work Study program, under which the "federal government ... provide[s] the university a fund of federal money that must be matched by university money[,] which is then used [to pay] student workers".

Moreover, approximately five million dollars of aid comes via the Pell Grant program, under which the federal government "writes a check ... directly to Louisiana Tech University", and funds are "funneled through" the University "for distribution to the student". Because these funds are earmarked for educational purposes, the University will typically distribute the money directly to a student's account with the school, where it is applied toward expenses such as tuition, room and board, and meals.

7

The crux of the University's argument is that, because it is the student who ultimately receives the above-described federal funds, the University is not a recipient of federal aid within the meaning of § 504 and § 2000d-7, and thus, has not waived its Eleventh Amendment immunity. The University's argument, however, is effectively foreclosed by the Supreme Court's holdings in <u>Grove City College v. Bell</u>, 465 U.S. 555 (1984), and <u>U.S. Dept. of Transportation v. Paralyzed Veterans of America</u>, 477 U.S. 597 (1986).

In <u>Grove City</u>, the Supreme Court held that the petitioner, a private college, was a recipient of federal funds within the meaning of § 901(a) of Title IX,[6] which prohibits sex discrimination in "any education program or activity receiving Federal financial assistance". In so holding, the Court observed that, although the college received no direct federal aid, "the language of § 901(a) contains no hint that Congress perceived a difference between direct institutional assistance and aid received by a school through its students". 465 U.S. at 564. The Court further observed that "the economic effect of direct and indirect assistance often is indistinguishable", particularly insofar as federal aid "effectively supplements [a college's] own financial aid program". <u>Id.</u> at 565.

---

[6] 20 U.S.C. § 1681(a).

Later, in Paralyzed Veterans of America, the Court held that, although airlines benefitted from federal financial assistance given to airport operators, they were not recipients of federal aid under § 504. See 477 U.S. 597. The Court distinguished Grove City by noting that, in that case, "it was clear ... that Congress' intended recipient was the college, not the individual students to whom the checks were sent from the Government". Id. at 606-07. By contrast, in Paralyzed Veterans of America, the airport operators were the intended recipients and the airlines merely beneficiaries. Thus, under Grove City and Paralyzed Veterans of America, the relevant question is not whether the University passes federal funds through to students -- who, it should be noted, typically pass them back to the University in the form of tuition payments and other expenses -- but whether the University is an "intended recipient" of the funds Congress has appropriated.

In this case, just as in Grove City, Congress has expressly stated that one purpose of the relevant student aid provisions is "to assist in making available the benefits of postsecondary education to eligible students ... by ... providing assistance to institutions of higher education". 20 U.S.C. § 1070(a)(5) (emphasis added); see also 465 U.S. at 566. Moreover, the practical effect of the federal assistance in this case is precisely the same: it serves to supplement the University's financial aid, thereby enhancing the University's ability to enroll and educate financially needy students.

9

The Louisiana appellees contend that this case is distinguishable from Grove City, insofar as it involves a different statutory provision -- § 504 of the Rehabilitation Act, as opposed to § 901(a) of Title IX. We cannot see that such a distinction is at all germane. The relevant portions of the two statutes are identical -- both bar discrimination by entities "receiving Federal financial assistance" -- and the appellees have cited us to no authority suggesting that Congress intended the term to carry a different meaning in § 504 than it does in § 901(a).[7] If there is any relevant distinction between the instant case and Grove City, it is that the argument for finding that the institution is an "intended recipient" is stronger here, as the University actively participates in both the Federal Work Study and Pell Grant programs.[8] By contrast, Grove City College consistently refused state and federal financial aid, receiving it only indirectly from students who had independently sought and received Basic Education Opportunity Grants. See 465 U.S. at 559.

In sum, here, no less than in Grove City, the University is an intended recipient of federal financial assistance. Accordingly,

---

[7] The Supreme Court has observed that "[t]he scope of several other federal antidiscrimination measures [including § 504 and Title VI] is defined in nearly identical terms" to that of Title IX. National Collegiate Athletic Ass'n v. Smith, 525 U.S. 459, 466 n.3 (1999).

[8] To participate in Federal Work Study and similar programs, an institution must fulfill certain conditions, such as applying, being certified, and entering into a written program participation agreement. See 34 C.F.R. §§ 673.3, 668.14.

for that reason, it is subject to the requirements of § 504 of the Rehabilitation Act.

2

Because the University is a recipient of federal assistance, we must determine, based on the five-factor test set forth in Dole, whether the waiver condition in § 2000d-7 represents a constitutionally permissible exercise of Congressional power under the Spending Clause. We need not linger long on this question, as it was recently addressed in our en banc decision in Pace.

In Pace, we concluded that a school board's receipt of federal education funds constituted a knowing and voluntary waiver of sovereign immunity as to claims under § 504. See 403 F.3d at 280-87. Specifically, we noted that the waiver language of § 2000d-7 was "unambiguous", that the condition was sufficiently related to the federal interest in the program funded, and that it did not rise to the level of coercion. See id. As such, we held that the waiver condition set forth in § 2000d-7 is a constitutionally permissible exercise of Congress' spending power.[9]

_____

[9] We reject the Louisiana appellees' suggestion that a valid waiver of sovereign immunity under § 2000d-7 can occur only where federal assistance is received "under" or "pursuant to" the Rehabilitation Act. Nothing in the text of § 504 or § 2000d-7 suggests any such limitation. To the extent that the appellees' contention is based on some interpretation of the "knowing" waiver requirement, we find no support in Pace or any other case for the proposition that a waiver can be "knowing" only where a single statute provides for both the allocation of funds and the waiver condition.

11

We are, of course, bound by this court's prior en banc decision. Accordingly, we hold that the University -- and the remaining Louisiana appellees -- have waived their Eleventh Amendment immunity from suit under § 504 of the Rehabilitation Act and, concomitantly, that the district court erred in dismissing the appellants' § 504 claims.

B

The appellants further contend that Congress has abrogated Louisiana's Eleventh Amendment sovereign immunity from suit under Title II of the ADA. In Reickenbacker v. Foster, we rejected this argument, holding that enactment of Title II did not validly abrogate states' sovereign immunity. 274 F.3d 974 (5th Cir. 2001). Subsequently, however, in Tennessee v. Lane, the Supreme Court held that the abrogation of sovereign immunity in Title II is a valid exercise of congressional power, to the extent that it "applies to the class of cases implicating the fundamental right of access to courts". 541 U.S. 509, 533-34 (2004). We have yet to decide whether the principle of Lane extends to cases involving other rights or, alternatively, whether our holding in Reickenbacker continues to control in such cases. Because Louisiana has waived its sovereign immunity from actions under § 504 of the Rehabilitation Act, we need not address that question today.

As we explained in Pace, the rights and remedies afforded plaintiffs under Title II of the ADA are almost entirely duplicative of those provided under § 504 of the Rehabilitation

12

Act.[10]  See 403 F.3d at 287-88.  The only material difference between the two provisions lies in their respective causation requirements.  See id. at 288 (citing Soledad v. U.S. Dept. of Treasury, 304 F.3d 500 (5th Cir. 2002)).  Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...".  29 U.S.C. § 794(a) (emphasis added).  By contrast, under Title II of the ADA, "discrimination need not be the sole reason" for the exclusion of or denial of benefits to the plaintiff.  Soledad, 304 F.3d at 503-04 (quoting Woodhouse v. Magnolia Hosp., 92 F.3d 248, 253 (5th Cir. 1996)).

In Pace, we concluded that the different causation requirements were immaterial where the plaintiff's challenge was to architectural barriers.  See 403 F.3d at 288-89.  The rationale underlying this conclusion, although not expressly stated, is straightforward.  In addition to their respective prohibitions of disability-based discrimination, both the ADA and the

---

[10]  Title II expressly provides that "[t]he remedies, procedures, and rights set forth in section 794a of Title 29 [-- i.e., § 504 of the Rehabilitation Act --] shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title".  42 U.S.C. § 12133.

13

Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals.[11] Where a defendant fails to meet this affirmative obligation, the cause of that failure is irrelevant.[12]

In the instant case, there is no question that the complaint claims the University's failure to provide the demanded accommodations is the sole cause of the alleged denial of benefits to the plaintiffs. That is to say, the plaintiffs claim that they were excluded from participation in their classes precisely to the extent that they were not accommodated with interpreters or note takers. The question here is not whether or to what extent the plaintiffs suffer a disability under the ADA; nor is the question

---

[11] Title II of the ADA requires public entities to (1) make "reasonable modifications to rules, policies, or practices"; (2) "remov[e] ... architectural, communication, or transportation barriers"; and (3) "provi[de] auxiliary aids and services", so as to enable disabled persons to participate in programs or activities. 42 U.S.C. § 12131(2). Likewise, the regulations implementing § 504 mandate that "each program or facility" to which the provision applies must be "readily accessible and usable by handicapped persons". 28 C.F.R. § 42.521(a). Covered entities may be required to facilitate access via the "acquisition or redesign of equipment, reassignment of services to accessible buildings, assignment of aids to beneficiaries, delivery of services at alternate accessible sites, alteration of existing facilities, or any other method that results in making its program or activity accessible to handicapped persons". Id. at § 42.521(b).

[12] In lieu of such an inquiry, the court must determine whether the requested accommodation was "reasonable" –– that is, whether it would impose "undue financial or administrative burdens" or would require a "fundamental alteration in the nature of the program". See School Board of Nassau County v. Arline, 480 U.S. 273, 288 n. 17 (1987) (quoting Southeastern Community College v. Davis, 422 U.S. 397, 410, 412 (1979)).

14

whether the denial of the accommodation to that disability was caused solely or only in part by the animus of the defendants. The question is whether the failure to accommodate the disability violates the ADA; and the existence of a violation depends on whether under both the Rehabilitation Act and the ADA, the demanded accommodation is in fact reasonable and therefore required. If the accommodation is required the defendants are liable simply by denying it. In short, causation is not the issue in the appeal presented today.[13]

Thus, having already held that sovereign immunity does not bar the appellants' claim under § 504, we need not address at this juncture the issue of abrogation under Title II of the ADA, because the rights and remedies under either are the same for purposes of this case.

### III

For the foregoing reasons, we REVERSE the district court's dismissal of the appellants' claims under § 504 of the Rehabilitation Act and REMAND for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

EDITH H. JONES, Circuit Judge, concurring:

---

[13] While the standard of causation is not material in this appeal, we do not foreclose the possibility that, as discovery proceeds, it may become a disputed issue.

15

I concur in the judgment and in the majority's opinion.  In my view, it would have been appropriate to decide whether <u>Tennessee v. Lane</u> extends Congress's permissible abrogation of state sovereign immunity in ADA Title II beyond its precise purview, <u>i.e.</u>, the fundamental right of access to the courts, and into the field of education.  <u>Tennessee v. Lane</u>, 541 U.S. 509, 533-34 (2004).  <u>See Pace v. Bogalusa ISD</u>, 403 F.3d 272, 303 (5th Cir. 2005)(Jones, J., concurring in part and dissenting in part).