43 A.3d 445 (2012)
426 N.J. Super. 68
Gregory LASKY, Plaintiff-Appellant, and
Advocates for Disabled Americans (AFDA), Plaintiff,
v.
BOROUGH OF HIGHTSTOWN, Defendant-Respondent.
Docket No. A-5256-10T1
Superior Court of New Jersey, Appellate Division.
Submitted April 23, 2012.
Decided May 11, 2012.
*446 Anthony J. Brady, Jr., attorney for appellant.
Methfessel & Werbel, P.C., attorneys for respondent (Eric L. Harrison, Edison, of counsel; Mr. Harrison and Michael Poreda, on the brief).
Before Judges PARRILLO, GRALL and SKILLMAN.
The opinion of the court was delivered by
PARRILLO, P.J.A.D.
This civil rights litigation, alleging a municipality's violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, by failing to make various public facilities handicap accessible, raises the novel issue of whether a request for assistance is required to sustain an LAD public accommodation disability discrimination claim alleging overall lack of access. The motion judge granted summary judgment dismissal of plaintiff's LAD complaint because plaintiff, indisputably, did not request an accommodation prior to filing suit. Plaintiff appeals, and for the following reasons, we now reverse.
Plaintiff, a paraplegic, is a Florida resident who frequently travels to New Jersey to see friends and assist others in Hightstown, where he also acts as a "tester," visiting facilities to determine their accessibility to the disabled. On March 12 and 13, 2008, plaintiff attempted access to several public buildings in the borough. According to plaintiff, City Hall was "not properly accessible, the parking sign [wa]s too low, the urinal [wa]s too high, the toilet paper dispenser [wa]s over the grab bar, [there was] no insulation on the pipes, the door [wa]s too heavy, and there may be a problem with turnaround space...." The museum across from City Hall had no disabled parking and the sidewalk path leading to its entrance was "not accessible because the route [wa]s on an acute slope and cross slope. . . ."
*447 Plaintiff encountered similar barriers in downtown Hightstown, where the sidewalks and curb cuts on Bank and Main Streets were on "acute slopes and cross slopes...." Plaintiff also could not access the library because there were no disabled parking spaces and "the drop off box [wa]s on an acute slope." The Army Navy Memorial too had no accessible parking, and the "sidewalk to river view ha[d] cross slopes. . . ." Plaintiff summarized his access difficulties thus:
I was unable to be a patron at the library, museum, Army Navy Memorial, and my ability to use the routes on Bank St[reet] and Main St[reet] has been impaired because of slopes and cross slopes. I was a patron of the Municipal Court Building at City Hall[.] [However, my access was impaired] ... because of [a] lack of accessible bathroom and parking.
These conditions persisted on October 13, 2010, when plaintiff attempted to revisit Hightstown's library, municipal building and downtown area. Despite having his access "greatly impaired[,]" plaintiff never requested assistance from a municipal employee or any other representative of the borough in facilitating access to Hightstown's services and facilities.
Plaintiff secured the services of an expert, who reported areas of non-compliance with the Americans with Disabilities Act of 1990(ADA), 42 U.S.C.A. §§ 12101-12132; American National Standards Institute (ANSI) regulations; and the New Jersey Barrier Free Subcode, N.J.A.C. 5:23-7.1 to -7.32 (2009), including, but not limited to, the bathroom facilities in City Hall, the ramp leading to City Hall, the rear parking area of City Hall, the book drop slot at the library, the landing behind the Army Navy Memorial, curb cuts at the corners of Main and Franklin Streets and Hightstown Mall and Broad Street, and cross slopes on various streets in downtown Hightstown.
Thereafter, plaintiff and Advocates for Disabled Americans (AFDA) filed a complaint, alleging that the Borough of Hightstown (at times defendant) discriminated against them by failing to provide plaintiff access to defendant's "services including the sidewalks and curb cuts, library, municipal hall and parking[,]" in violation of Title II of the ADA and LAD. After defendant removed the case to federal court, plaintiff filed an amended complaint that abandoned the ADA claim and requested less than $75,000 in damages. Following the case's remand to state court, AFDA dismissed its claims with prejudice.
Following discovery, on defendant's motion for summary judgment, the court dismissed plaintiff's public accommodation disability discrimination claims, finding an obligation under the LAD for plaintiff to request assistance from a place of public accommodation prior to filing suit and that, in this instance, plaintiff never made such a request:
There's no indication that those requests were made, they were put on notice, so there's no way to see whether or not they would have reasonably accommodated [plaintiff].
. . . .
. . . [U]nder the law I think there has to be some notice to them. I don't mean notice of the lawsuit, like we talked about in the beginning, but some notice that somebody is trying to utilize a town's service, a building, or what have you, and I'm saying there is no issue of material fact here that that notice was given. And under the law ... I think that notice is required before you can see whether or not they had the opportunity to reasonably accommodate.
This matter involves an interpretation of the LAD. Therefore, our review is de novo. *448 Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995).
Regarding public facilities, the LAD's declared public policy is that "[a]ll persons shall have the opportunity . . . to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation" without discrimination on the basis of disability. N.J.S.A. 10:5-4; see also N.J.S.A. 10:5-4.1. To that end, N.J.S.A. 10:5-12 provides, in pertinent part:
It shall be . . . an unlawful discrimination:
. . . .
f. (1) For any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof....
Consistent therewith, the LAD's implementing regulations require places of public accommodation to provide reasonable access. In particular, N.J.A.C. 13:13-4.3 prohibits
an owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation to refuse, withhold from or deny an individual, either directly or indirectly, on account of that person's disability or perceived disability, access to any of the accommodations, advantages, facilities or privileges of a place of public accommodation. . . .
N.J.A.C. 13:13-4.4 provides that places of public accommodations are, "to the extent reasonable," required to accommodate "a person with a disability in the most integrated setting appropriate to the needs of that person." N.J.A.C. 13:13-4.11(a) requires all places of public accommodation to make
reasonable accommodations to the limitations of a . . . [disabled] patron or prospective patron . . ., including making such reasonable modifications in policies, practices, or procedures, as may be required to afford goods, services, facilities, privileges, advantages, or accommodations to a person with a disability, unless the owner, lessee, proprietor, manager, superintendent, agent or employee of the place of public accommodation demonstrates that making the accommodations would impose an undue burden on its operation.
And N.J.A.C. 13:13-4.12 details examples of "[a]ccommodations that may be reasonable in . . . particular situation[s]," N.J.A.C. 13:13-4.12(a), including "[m]aking reasonable structural alterations[,]" N.J.A.C. 13:13-4.12(a)2, and "providing an alternative accessible path." N.J.A.C. 13:13-4.12(a)10iv. Thus, what is considered reasonable in a particular circumstance is typically a fact-sensitive inquiry, resolvable by a jury. See N.J.A.C. 13:13-4.12; Franek v. Tomahawk Lake Resort, 333 N.J.Super. 206, 218-19, 754 A.2d 1237 (App.Div.), certif. denied, 166 N.J. 606, 767 A.2d 484 (2000); see also Lasky v. Moorestown Twp., 425 N.J.Super. 530, 540-42, 42 A.3d 212 (App.Div.2012).[1]
Focusing on N.J.A.C. 13:13-4.11 in particular, defendant contends that a public entity's obligation to make "reasonable accommodations to ... a ... prospective patron[,]" is triggered only when that entity first receives notice from the prospective patron of the requested accommodation. Plaintiff, on the other hand, maintains that a prospective patron would *449 not likely know in advance whether a public facility is accessible, thus obligating a public entity to provide access in the absence of a request.
In ascertaining legislative intent, the scheme in place "`must be read in its entirety; each part or section should be construed in connection with every other part or section to provide a harmonious whole.'" Burnett v. County of Bergen, 198 N.J. 408, 421, 968 A.2d 1151 (2009) (quoting Bedford v. Riello, 195 N.J. 210, 224, 948 A.2d 1272 (2008)). "`[G]enerally, the best indicator of ... [legislative] intent is the statutory language.'" Ibid. (quoting DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005)). But where "there is ambiguity in the statutory language that leads to more than one plausible interpretation," as there appears to be here, "we may turn to extrinsic evidence, `including legislative history, committee reports, and contemporaneous construction.'" Di-Prospero, supra, 183 N.J. at 492-93, 874 A.2d 1039 (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75, 861 A.2d 123 (2004)). As to the latter, "[a]n agency's interpretation of its own regulations is entitled to substantial deference[,]" I.L. v. Dept. of Human Servs., 389 N.J.Super. 354, 364-65, 913 A.2d 122 (App.Div. 2006) (quoting DiMaria v. Bd. of Trs. of Pub. Employees' Ret. Sys., 225 N.J.Super. 341, 351, 542 A.2d 498 (App.Div.), certif. denied, 113 N.J. 638, 552 A.2d 164 (1988)), when it does not "flout the statutory language and undermine the intent of the Legislature." GE Solid State, Inc. v. Dir., Div. of Taxation, 132 N.J. 298, 306-07, 625 A.2d 468 (1993); see also Patel v. N.J. Motor Vehicle Comm'n, 200 N.J. 413, 420, 982 A.2d 445 (2009).
During the public comment period, certain interested persons urged the Division on Civil Rights (Division) "to revise its rules to clarify that owners of places of public accommodation have an ongoing obligation to maintain their facilities free from architectural barriers, in order to ensure that barrier removal is not contingent on a specific request of an individual with disabilities." 33 N.J.R. 1853 (June 4, 2001). In response, the Division stated:
The proposed amendments require places of public accommodation to make reasonable modifications in policies, practices, or procedures required to afford persons with disabilities the goods, services, facilities, privileges, and advantages of the public accommodation, unless such modifications are demonstrated to impose undue hardship. The proposed amendments set forth examples of reasonable accommodation that may be required, which include a series of reasonable structural alterations. The amendments also require places of public accommodation, to the extent reasonable, to ensure that paths of travel are readily accessible and usable by people with disabilities. This duty may include providing accessible entrances, walks and sidewalks, and curb ramps, and making other structural modifications. Although it is not within the Division's rulemaking authority to order across-the-board barrier removal equivalent to the mandates authorized by the ADA, nothing in the Division's proposed rules as amended conditions the obligation of a place of public accommodation to provide reasonable accommodation on receipt of a request by a person with a disability. Rather, the obligation to provide structural modification, or any other modification, is governed by the standard of reasonableness, and can be excused only if the public accommodation can demonstrate that it would impose an undue hardship. Therefore, the Division declines to amend the proposed rules as suggested by the petitioner.

*450 [33 N.J.R. 1853-1854 (emphasis added).]
In declining "to include in its rules a requirement that owners of places of public accommodation consider the wishes of the person with a disability in developing accommodations[,]" the Division expressly recognized that while the LAD requires
an interactive process to develop reasonable accommodations in some settings,... the obligation of the owner or operator of a place of public accommodation to consider the wishes of an individual with a disability seeking an accommodation is subsumed in the concept of what is generally reasonable and effective in a given situation.
[33 N.J.R. 1853 (emphasis added).]
As this statement makes clear, the Division declined to extend the "interactive process" requirement, generally applied by courts in the employment context, see infra at 14-15, to the public accommodations context. In keeping with this restraint, we have rejected the "overgeneralized use of specific principles and approaches developed to determine liability in employment discrimination cases" in public accommodation cases. Franek, supra, 333 N.J.Super. at 215, 754 A.2d 1237; see, e.g., Hall (Estate of Potoczak) v. St. Joseph's Hosp., 343 N.J.Super. 88, 106, 777 A.2d 1002 (App.Div.2001) (stating that evidence of the request for an interpreter was not needed to establish notice to the defendant because notice is not an element of the plaintiff's LAD claim), certif. denied, 171 N.J. 336, 793 A.2d 715 (2002); Borngesser v. Jersey Shore Med. Ctr., 340 N.J.Super. 369, 379, 774 A.2d 615 (App.Div.2001) (holding that a violation of Section 504 of the Federal Rehabilitation Act of 1973, 29 U.S.C.A. §§ 701-796, 29 U.S.C.A. § 794(a), does not depend on the hospital's awareness of the prohibited conduct).
On this score, we have noted the distinction that "[p]ublic accommodations cases do not involve ongoing organizational connections or the need to make allowances for other special features of the employer-employee relationship, such as its hierarchical qualities." Franek, supra, 333 N.J.Super. at 215, 754 A.2d 1237. We are therefore satisfied that the Division's interpretation of its regulations is entitled to deference, especially because it is consistent with the stated intention of the Legislature in enacting the LAD, that disabled persons have "`full and equal access to society, limited only by [their] physical limitations[,]'" Franek, supra, 333 N.J.Super. at 217, 754 A.2d 1237 (quoting D.I.A.L., Inc. v. N.J. Dep't of Cmty. Affairs, 254 N.J.Super. 426, 439, 603 A.2d 967 (App.Div.1992)); accord Anderson v. Exxon Co., 89 N.J. 483, 495, 446 A.2d 486 (1982) (employment context); see also GE Solid State Inc., supra, 132 N.J. at 306-07, 625 A.2d 468; and that the LAD be construed liberally to that end. Franek, supra, 333 N.J.Super. at 217, 754 A.2d 1237. By focusing on what is generally reasonable rather than requiring a specific individual's request in addressing accessibility issues, the agency has acted consistent with the LAD's express proscription against the direct or indirect withholding of access to places of public accommodation. N.J.S.A. 10:5-12f(1).
In contending otherwise, defendant relies on three cases that, it argues, implicitly establish that a request for assistance is required to establish a public accommodation disability discrimination claim. However, all of those cases are distinguishable because the respective plaintiffs requested assistance prior to bringing suit. See Estate of Nicolas v. Ocean Plaza Condo. Assoc., Inc., 388 N.J.Super. 571, 576, 909 A.2d 1144 (App.Div.2006); Ellison v. Creative Learning Ctr., 383 N.J.Super. 581, 585, 893 A.2d 12 (App.Div.2006); Oras v. Hous. Auth. of City of Bayonne, 373 *451 N.J. Super. 302, 306-11, 861 A.2d 194 (App. Div.2004). Those circumstances are not present here.
In fact, New Jersey case law does not directly address whether a plaintiff must first request an accommodation to sustain a prima facie public accommodation disability discrimination claim under the LAD. In the absence of controlling authority, in interpreting the LAD in disability discrimination claims, "federal law has consistently been considered for guidance." Borngesser, supra, 340 N.J.Super. at 380, 774 A.2d 615 (on LAD claim, applying federal law under Section 504 of the Federal Rehabilitation Act of 1973 as guidance); Ensslin v. Twp. of N. Bergen, 275 N.J.Super. 352, 363-64, 646 A.2d 452 (App. Div.1994), certif. denied, 142 N.J. 446, 663 A.2d 1354 (1995); see also Chisolm v. McManimon, 275 F.3d 315, 325 n. 9 (3d Cir.2001) (confining discussion to ADA Title II "with the understanding that the principles will apply equally to the Rehabilitation Act and NJLAD claims").
Under applicable federal law, whether a request for assistance is required to sustain a public accommodation disability discrimination cause of action depends on the nature of the specific claim being made. There is a clear dichotomy between, on the one hand, those claims alleging an overall lack of access, which require no advance notice, and, on the other hand, those claims alleging a failure to reasonably accommodate by making specific adaptations necessitated by the individual's disability, which do require notice.
Regarding the latter, under Title II of the ADA, which prohibits disability discrimination by public entities, 42 U.S.C.A. § 12132, a plaintiff claiming discrimination on the basis that a public entity failed to provide a particular reasonable accommodation needs to show that the public entity had knowledge that the individual required accommodation. See, e.g., Robertson v. Las Animas County Sheriff's Dep't, 500 F.3d 1185, 1196 (10th Cir.2007) ("[B]efore a public entity can be required under the ADA to provide an auxiliary aid ..., the entity must have knowledge that the individual is disabled, either because that disability is obvious or because the individual (or someone else) has informed the entity of the disability."); Kiman v. N.H. Dep't of Corrs., 451 F.3d 274, 283 (1st Cir.2006) ("In cases where the alleged violation involves the denial of a reasonable modification/accommodation, `the ADA's reasonable accommodation requirement usually does not apply unless triggered by a request.'") (quoting Reed v. LePage Bakeries, Inc., 244 F.3d 254, 261 (1st Cir.2001)) (internal quotations and footnote omitted); Pena v. Bexar County, 726 F.Supp.2d 675, 685-86 (W.D.Tex.2010) ("[W]hen the allegation is failure to accommodate, the question is ... `whether the failure to accommodate the disability violates the ADA; and the existence of a violation depends on whether under both the Rehabilitation Act and the ADA, the demanded accommodation is in fact reasonable and therefore required.'") (quoting Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 455 (5th Cir.2005), cert. denied, 547 U.S. 1098, 126 S.Ct. 1888, 164 L.Ed.2d 568 (2006)); Brown v. County of Nassau, 736 F.Supp.2d 602, 618 (E.D.N.Y.2010) (same).
The requirement that a plaintiff request accommodation prior to filing suit is especially compelling in cases involving a claim of a failure to accommodate where there exists a prior relationship between the parties, as in education and prison settings. See, e.g., Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir.1999) ("[I]t is true that public entities [such as prison facilities] are not required to guess at what accommodations they should provide...."); In re: Reasonable Testing Accommodations of *452 LaFleur, 722 N.W.2d 559, 562 (S.D.2006) (stating that to prevail on a failure to accommodate claim against an educational institution, a plaintiff "`must show (1) that [he] is disabled, (2) that [his] requests for accommodations [were] reasonable, and (3) that those requests have been denied'") (quoting D'Amico v. N.Y. State Bd. of Law Exam'rs, 813 F.Supp. 217, 221 (W.D.N.Y.1993)); Lindberg v. Livonia Pub. Schs., 219 Mich.App. 364, 556 N.W.2d 509, 511 (1996) ("[T]he [Persons With Disabilities Civil Rights Act] ... does not impose upon [an institution or employer] the additional obligation to determine which accommodations are necessary to respond to each individual's distinct handicap or special needs.").
In contrast, "[w]hen a disabled individual's need for an accommodation is obvious," Robertson, supra, 500 F.3d at 1197 (citing Chisolm, supra, 275 F.3d at 330), or where "the claim is an overall lack of program accessibility under Title II and its implementing regulations ..., there is no requirement that the plaintiff have requested a specific accommodation before filing the lawsuit in order to prevail." Brown, supra, 736 F.Supp.2d at 618 (citing Bacon v. City of Richmond, 386 F.Supp.2d 700, 707 (E.D.Va.2005)); see also Huezo v. L.A. Cmty. Coll. Dist., 672 F.Supp.2d 1045, 1062-63, 1068 (C.D.Cal.2008) (granting motion for permanent injunctive relief, and stating that "[b]y continuing to require disabled students to request accommodation [regarding inaccessible workstations and paths of travel] ..., the District has failed to operate its facilities and services in a non-discriminatory manner").
For example, in Schonfeld v. City of Carlsbad, 978 F.Supp. 1329 (S.D.Cal.1997), aff'd, 172 F.3d 876 (9th Cir.1999), the plaintiffs alleged disability discrimination in violation of Title II of the ADA and the Rehabilitation Act because "they were unable to access specific buildings and use the defendant's parking facilities, ramps and streets." Id. at 1331. On the parties' cross-motions for summary judgment, the defendant argued that the plaintiffs were not qualified individuals with disabilities because they did not make formal requests to utilize the defendant's facilities and services. Id. at 1332. The court rejected the argument, finding that "[t]he ADA does not require plaintiffs bringing a claim alleging inadequate access to a facility to have `formally' requested to use the facility." Ibid.
The case of Panzardi-Santiago v. Univ. of P.R., 200 F.Supp.2d 1 (D.P.R.2002), perhaps best illustrates this dichotomy in approach. There, the plaintiffs alleged disability discrimination in violation of Title II of the ADA, and sought injunctive relief ordering the University of Puerto Rico and the Commonwealth of Puerto Rico to make the facilities at the university's campus "readily accessible and usable by qualified individuals with disabilities." Id. at 4.
The Commonwealth sought summary judgment on the claim that the plaintiff was denied services, access to programs, and reasonable accommodations at the university's facilities, arguing that no discrimination occurred because a request for reasonable accommodation concededly was never made and the Commonwealth did not know about the plaintiff's disability. Id. at 15. The court noted that both the Rehabilitation Act and ADA require, in educational settings, that a plaintiff notify the institution of the disability. Id. at 16. Since the record was undisputed that the Commonwealth had no knowledge of the plaintiff's disability and the plaintiff did not request an accommodation, the court granted the Commonwealth's motion. Id. at 17.
Additionally, the plaintiff sought summary judgment against the Commonwealth *453 on the claim that she suffered disability discrimination because of a road's overall inaccessibility on the university's campus. Ibid. Regarding whether the plaintiff's claim failed because she did not request a reasonable accommodation, the court explained that it
reviewed numerous cases to determine if a plaintiff is required to request accommodation in order to make a prima facie case in an arena outside of an educational setting. The cases cited by the Commonwealth were either employment or education discrimination cases. Cases involving access generally [subscribe] to the theory that a plaintiff bringing a claim alleging inadequate access to a facility does not have to formally request accommodation. See Layton v. Elder, 143 F.3d 469 (8th Cir.1998); Schonfeld v. City of Carlsbad, 978 F.Supp. 1329 (S.D.Cal.1997), [aff'd, 172 F.3d 876 (9th Cir.1999) ].
[Id. at 18 (emphasis added).]
We find this reasoning underlying the distinction in claims persuasive. It is entirely reasonable and consistent with the spirit, if not letter, of the Division's implementing regulations, to require qualified persons with a disability requesting a reasonable accommodation to apprise the public entity of his or her disabling condition and any suggestions for such possible public accommodations. Indeed, under the LAD, public entities are required, "to the extent reasonable," to accommodate disabled persons "in the most integrated setting appropriate to the needs of that person." N.J.A.C. 13:13-4.4(a) (emphasis added). That amendment was implemented in response to a comment that the rules should specify that "priority be given to an accommodation preferred by the person seeking accommodation." 31 N.J.R. 3979 (Dec. 6, 1999). The Division "agree[d] that a determination regarding the reasonableness of a proposed accommodation should include consideration of the needs and wishes of the person seeking accommodation and the effectiveness and adequacy of the modification." Ibid. Thus, the Division's comment strongly implies that, in a failure to accommodate claim, a plaintiff must notify the public entity of the requested accommodation so a reasonable accommodation that considers the needs and wishes of the disabled person may be provided.
On the other hand, where a more generalized claim alleging overall lack of access is made, a plaintiff seeking redress should not be required, as a prerequisite to filing such a claim, to first make a request for a reasonable accommodation. We find nothing in the language of the LAD itself or its legislative history to suggest that notice is an element of the claim in the public accommodation context. Indeed, allowance of such claims without the pre-condition of notice furthers the legislative goal of holding owners of places of public accommodation to their statutory obligation of making their facilities open and accessible to disabled persons, who should have "full and equal access to society, limited only by their physical limitations...." Franek, supra, 333 N.J.Super. at 217, 754 A.2d 1237 (internal quotations omitted). It is also consistent with the Division's interpretation of the statute the agency is charged with enforcing, to which we defer.
Here, the motion judge noted, as a matter of law, that a request for accommodation is required in every instance regardless of the specific circumstances and nature of the claim raised. In doing so, the court failed to appreciate the distinction, clearly drawn in federal cases under the ADA, between particularized claims of a failure to reasonably accommodate and generalized claims of an overall lack of *454 access, and therefore erred in dismissing plaintiff's entire complaint.
That complaint raises a number of public accommodation disability discrimination claims. We leave it to the motion judge, after appropriate and full discovery, and on a more complete record, to ascertain the precise nature and substance of the claims presented and to apply the principles we espouse today to each one.
Reversed and remanded for further proceedings in accordance with this opinion.
NOTES
[1] This opinion is being filed simultaneously with the instant opinion.