# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
January 24, 2022

Lyle W. Cayce
Clerk

No. 21-20251

John Doe,

*Plaintiff—Appellant*,

*versus*

Harris County; Albert Munoz; C. Obryant; Terrence Bullard; Myron Riser; Francis McIntyre; Cody Hickman; M. Watkins,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-106

Before Southwick, Oldham, and Wilson, *Circuit Judges*.

Per Curiam:*

The Eighth Amendment bars the use of excessive force against prisoners by prison officials. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)). It also requires those

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-20251

officials, *inter alia*, to "take reasonable measures to guarantee the safety of the inmates" and to ensure inmates receive adequate medical care. *Id.* (internal quotation marks omitted) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). John Doe asserts that during the thirty-six hours he was incarcerated by Harris County, Texas, prison officials violated his Eighth Amendment rights. Further, he alleges that Harris County failed to accommodate his epileptic disability under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, and the Rehabilitation Act, 29 U.S.C. § 701. We agree with the district court's conclusion that Doe has failed to provide support for any of his contentions. Therefore, we AFFIRM.

## I.

On January 14, 2016, Albert Munoz, a Harris County deputy sheriff, responded to a car accident at the 13500 block of Bammel N. Houston. Munoz interviewed Melida Reyes Aguilar who told him that about ten minutes prior to his arrival a vehicle had struck the back of her car while she was driving and pushed her several feet up the road. Reyes's black Honda had sustained heavy damage to the rear of the car. Reyes told Munoz that the ramming vehicle sped down the road, jumped the center median, and then returned to the right side of the road and sped away. Reyes had damage to her legs, and her three children were bleeding from leg injuries as well.

Munoz recovered a damaged license plate from the scene, and after running the plates discovered it belonged to a silver Nissan. Shortly after he finished interviewing Reyes, Munoz was called to a major crash further up the road involving a Ford Mustang and a silver Nissan whose remaining license plate matched the one Munoz had recovered. At the scene of the later crash, Munoz met Porfirio Gudino. Gudino told Munoz that about twenty minutes earlier his vehicle had been rear-ended by a silver Nissan. The Nissan did not stop, so Gudino tailed it. Gudino saw it smash into Reyes's

No. 21-20251

car and then drive away. Guidino followed it until the Nissan ran into the Mustang. He told Munoz that the driver attempted to flee from the third accident site also, but the Nissan was incapacitated after the final crash.

The driver of the Nissan was John Doe, and he told the officers on the scene that he had suffered a seizure. Doe said he remembered being involved in a crash, but that he had stopped, exchanged information with the other driver, and then left. After consulting with the District Attorney's Office, Munoz arrested Doe for Failure to Stop and Render Aid.

Doe was taken to the Harris County Sheriff's Office Inmate Processing Center. Early in the morning on January 15, 2016, he proceeded through initial booking and an initial medical screening. The Classification Deputy, Officer Myron Riser, then determined Doe's inmate classification and assigned him housing inside the jail after considering a number of factors. Among others, Riser assessed the severity of Doe's arresting offense, his age, and his physical and mental health history.

Based on the evaluation, Riser assigned Doe to maximum custody rather than medium or minimum custody. After he was classified, Doe was sent to the medical clinic. There, he was evaluated and assigned a bottom bunk due to his history of seizures. Doe was eventually housed on the sixth floor of the Harris County Sheriff's Office Inmate Processing Center. While in the cell, Doe was approached by other inmates who punched, beat, and kicked him. During the attack, Doe had a seizure and urinated and defecated on himself. He was also allegedly sexually assaulted by an inmate known only as "T."

Cody Hickman, a Detention Officer, saw multiple inmates running into a portion of the cell where the inmates were attacking Doe. Hickman called for assistance and three other detention officers responded and ended the altercation. According to Hickman, "the altercation was brief and did

No. 21-20251

not appear to . . . result in any serious injuries for [Doe]." Doe was asked who his assailants were but he refused to identify them. Doe was then escorted by Francis McIntyre, one of the Detention Officers, to the medical clinic for evaluation.

While taking an elevator to the clinic, Doe touched McIntyre's arm. McIntyre told Doe to "keep his hands off of [him]." Allegedly feeling the onset of another seizure, Doe grabbed McIntyre, who then moved out of the way, grabbed Doe around the neck and held him against the wall of the elevator.

The medical clinic recorded[1] that Doe suffered an injury to his left hand and left eye but appeared alert and oriented with no drainage from his eyes. The clinic noted he was not in acute distress. Doe was released from the jail on January 16, 2016.

In March 2016, Doe filed an internal affairs complaint against the officers involved in his arrest and detention. After review, the Office of the Inspector General for the Harris County Sheriff's Office determined there was insufficient evidence to support his allegations and closed the investigation. Doe then filed suit under 42 U.S.C. § 1983 in federal district court against Munoz, Riser, McIntyre, Hickman, Harris County, and others. He alleged wrongful arrest and violation of his Eighth Amendment rights to be protected while in state custody, receive adequate medical care while in custody, and to be free from excessive force. He further alleged that Harris

---

[1] Doe disputes that he was ever taken to the medical clinic, instead alleging that he was locked in the showers for roughly an hour, was given a fresh pair of boxer briefs, and never received any further medical attention. But Doe's unsubstantiated assertions directly conflict with both the medical clinic's records from the visit and affidavits supplied by Harris County attesting that the records document Doe's visit.

No. 21-20251

County had violated the ADA and the Rehabilitation Act by denying him appropriate housing to accommodate his history of seizures.

After limited discovery, the defendants filed a consolidated motion for summary judgment. The individual officers asserted qualified immunity against Doe's claims, and Harris County asserted that because no constitutional violation or discrimination occurred, Doe's suit against it must be dismissed. Finding that Doe did not present sufficient facts to support any of his claims and was thus unable to overcome the assertion of qualified immunity, the district court granted summary judgment. Doe now appeals.

## II.

Doe asserts the district court erred by granting summary judgment in favor of Officers Riser and McIntyre and Harris County. He alleges Riser violated his Eighth Amendment rights guaranteeing reasonable safety while in state custody and access to adequate medical care; McIntyre violated his Eighth Amendment right against the use of excessive force while in state custody; and that Harris County is liable for these actions as well as discrimination in violation of the ADA and the Rehabilitation Act. His arguments presuppose that Riser and McIntyre's assertions of qualified immunity were erroneous.

We review summary judgment de novo. *Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019) (quoting *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017) (per curiam)). In doing so, we apply the same standards as the district court; relevant here, "[o]nce a government official asserts [qualified immunity], the burden shifts to the plaintiff to 'rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct.'" *Id.* (quoting *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008)).

5

No. 21-20251

Because Doe focuses his briefing almost exclusively on whether Riser or McIntyre violated clearly established law, our Eighth Amendment analysis does likewise. Finding they did not, such that Doe's claims against them fail, we also conclude that Doe's claims against Harris County falter.

### A.

### 1.

A prison official violates the Eighth Amendment duty to protect inmates[2] when "as an objective matter, the deprivation or harm [is] 'sufficiently serious[,]'" and when "the official [has] been deliberately indifferent." *Jason v. Tanner*, 938 F.3d 191, 195 (5th Cir. 2019) (citing *Farmer*, 511 U.S. at 834). "Deliberate indifference 'is an extremely high standard to meet.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks omitted) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)). It requires a showing that a prison official knew that an inmate faced "a substantial risk of bodily harm" and a showing that the prison official disregarded "that risk by failing to take reasonable measures to abate it." *Id.* (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 847).

Doe alleges that Officer Riser was deliberately indifferent to his safety and to his need for medical care. The intake forms filled out by Riser indicate that Doe had a history of seizures. They also indicate that given Doe's offense level, he should have been assigned to maximum custody. As Doe

---

[2] Doe was a pretrial detainee, not a convicted inmate. But we have noted that "there is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001) (citing *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996) (en banc)). Thus, the same legal standard applies to both convicted inmates and pretrial detainees. *See Rombach v. Culpepper*, No. 20-30554, 2021 WL 2944809, *4 n.6 (5th Cir. July 13, 2021) (unpublished).

acknowledges, in the light of his history of seizures, Riser assigned him a bottom-bunk pass to help mitigate any danger from a seizure.

Doe argues that Harris County's policy of housing individuals with cerebral palsy in the medical unit to allow treatment of their spasticity should have put Riser on notice that Doe likewise faced a substantial risk of bodily harm if he was placed in maximum custody instead of medium custody or the medical unit. Though he does not suffer from cerebral palsy, he asserts that he is similarly situated because, just like someone with cerebral palsy, his seizures could leave him defenseless. But Doe's analogy, on which he constructs Riser's alleged deliberate indifference, is strained at best. Doe does not produce any legal support for his contention that because Harris County acknowledged that individuals with cerebral palsy require certain accommodations, the County and its prison officials also knew that individuals with a history of seizures faced significant harms and therefore should be accommodated similarly. *See Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021).

Beyond this theory, Doe's arguments are yet more attenuated. He asserts Riser should have inferred that Doe faced significant harm from maximum security because of his history of seizures. But Doe again fails to support his argument with any law or fact showing that Riser knew or should have known a history of seizures put Doe at an alleged risk of significant harm. *Gobert*, 463 F.3d at 346 (quoting *Farmer*, 511 U.S. at 847). Rather than deliberate indifference, the record shows Riser and Harris County accommodated Doe's seizure disorder by assigning him a bottom bunk. Simply put, Doe's allegations and inferences do not meet the high bar necessary to prove deliberate indifference to his safety. *Id.* (quoting *Domino*, 239 F.3d at 756).

No. 21-20251

**2.**

Likewise, Doe fails to clear the high bar related to his access to adequate medical treatment. Failure to respond to a prisoner's serious medical needs can also constitute a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But inadvertent or negligent denials of adequate medical care do not rise to the level of a constitutional violation. *Id.* at 106. Thus, similar to a duty-to-protect-claim, any petitioner claiming a violation of the Eighth Amendment based on inadequate medical care must demonstrate both "objective exposure to a substantial risk of serious harm[,]" and that "prison officials acted or failed to act with deliberate indifference to that risk." *Gobert*, 463 F.3d at 345–46 (citing *Farmer*, 511 U.S. at 834).

During his booking process Doe was sent to the medical clinic, where he was screened and had his vital signs measured. Doe was again sent to the medical clinic after Riser established his housing classification because Doe had potentially suffered a seizure during the classification process and needed to be evaluated. And after the altercation with other inmates, affidavits supplied by Harris County establish that Doe was again examined by two different medical providers. Finally, before he was discharged, Doe was again examined by medical professionals. Over the course of these examinations, Doe was prescribed medicines to treat epilepsy, hypertension, and bacterial infections. Contrary to Doe's unsupported assertions that he was provided no medical treatment while incarcerated, the record demonstrates that no official "intentionally den[ied] or delay[ed] his access to medical care." *Estelle*, 429 U.S. at 104–05. Therefore, he has failed to show deliberate indifference to his medical needs cognizable under the Eighth Amendment.

No. 21-20251

## B.

A prison official uses excessive force against an inmate in violation of the Eighth Amendment when such force is not "applied in a good faith effort to maintain or restore discipline" but is used "maliciously and sadistically for the very purpose of causing harm." *McMillian*, 503 U.S. at 6 (internal quotation marks omitted) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). To determine if force employed was excessive, we analyze "(1) 'the extent of [the] injury suffered,' (2) 'the need for [the] application of force,' (3) 'the relationship between that need and the amount of force used,' (4) 'the threat reasonably perceived by the responsible officials,' and (5) 'any efforts made to temper the severity of the response.'" *Bourne*, 921 F.3d at 491 (quoting *McMillian*, 503 U.S. at 7). Mindful of these factors, the claim ultimately turns "on the nature of the force, rather than the extent of the injury." *Id.* at 492 (internal quotation marks omitted) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (per curiam)).

Doe alleges that Officer McIntyre used excessive force against him while in the elevator following the inmate assault. In the elevator, Doe touched McIntyre's arm. McIntyre instructed Doe to "keep his hands off of [him]." Doe, allegedly feeling another seizure beginning, leaned forward and grabbed McIntyre. Doe alleges McIntyre then moved, grabbed Doe by the neck, placed his forearm on Doe's throat, and slammed Doe against the wall of the elevator.

Doe argues that McIntyre had to be aware that Doe was about to suffer a seizure and thus needed to stabilize himself; thus, reacting with force was excessive. But courts must evaluate excessive force claims "from the perspective of a reasonable officer on the scene . . . not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Short of an announcement by

9

Doe himself, McIntyre would have had no way of knowing Doe was about to suffer a seizure. Given that Doe's argument is premised on this notion that force was excessive because McIntyre should have known that Doe was about to experience a seizure, we cannot say on the record before us that McIntyre's actions in restraining an inmate making physical contact with the officer was excessive.

## C.

Because Doe cannot establish violations under the Eighth Amendment against Riser or McIntyre, Doe also cannot maintain his claim for municipal liability against Harris County. Under 42 U.S.C. § 1983, a municipality can be liable for a constitutional violation against an individual if the plaintiff can substantiate "a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978)). Because Doe cannot meet the third element, his claim against Harris County fails.

## D.

Lastly, Doe contends that Harris County failed to accommodate his history of seizures in violation of the ADA and Rehabilitation Act. Under those laws, public entities have "an affirmative obligation to make reasonable accommodations for disabled individuals." *Smith v. Harris Cnty.*, 956 F.3d 311, 317 (5th Cir. 2020) (internal quotation marks omitted) (quoting *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005)) (citing *Tennessee v. Lane*, 541 U.S. 509, 531 (2004)). To prove Harris County violated this obligation, Doe had to demonstrate that "(1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Id.* (internal quotation marks omitted)

(quoting *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015)).  The knowledge element is generally satisfied by "showing that [Doe] identified [his] disabilities as well as the resulting limitations to a public entity or its employees and requested an accommodation in direct and specific terms." *Id.* (citing *Windham v. Harris Cnty.*, 875 F.3d 229, 237 (5th Cir. 2017)).  If a plaintiff does not make such a specific request, he can only succeed if he shows "that 'the disability, resulting limitation, and necessary reasonable accommodation' were 'open, obvious, and apparent' to the entity's relevant agents." *Id.* at 317–18 (quoting *Windham*, 875 F.3d at 237).

The record demonstrates that Doe did not make any specific request. But Doe nonetheless alleges that Harris County failed to make any reasonable accommodations for his history of seizures.  He asserts that, based on his personal health history, the history of assaults in the prison, the prison's policy of placing individuals with cerebral palsy in the medical unit, and the lack of any corresponding accommodation for individuals with seizures, it could be inferred that he should not have been housed in maximum custody.

Doe's argument is self-defeating.  He argues that a jury could "infer" that he should have been provided a housing accommodation, but he does not argue that his disability was such that it would be "open, obvious, and apparent" that he had to be housed somewhere other than where he was. *Id.* at 317–18 (quoting *Windham*, 875 F.3d at 237).  For this reason, his ADA and Rehabilitation Act claims also fail.

## III.

As Doe's claims are unsupported by the record, Riser, McIntyre, and Harris County were entitled to judgment as a matter of law.  Therefore, the district court's summary judgment is

AFFIRMED.