42 A.3d 212 (2012)
425 N.J. Super. 530
Gregory LASKY, Plaintiff-Appellant,
Advocates for Disabled Americans (AFDA), Plaintiff,
v.
MOORESTOWN TOWNSHIP, Defendant-Respondent.
Docket No. A-2742-10T3
Superior Court of New Jersey, Appellate Division.
Argued February 27, 2012.
Decided May 11, 2012.
*214 Anthony J. Brady, Jr., argued the cause for appellant.
Eric L. Harrison, Edison, argued the cause for respondent (Methfessel & Werbel, P.C., attorneys; Mr. Harrison, of counsel and on the brief; Joel Silberman, on the brief).
*215 Before Judges PARRILLO, SKILLMAN and HOFFMAN.
The opinion of the court was delivered by
PARRILLO, P.J.A.D.
Plaintiff Gregory Lasky, a paraplegic, filed suit against defendant Moorestown Township, alleging that defendant discriminated against him by not providing him access to Strawbridge Lake Park (park), in violation of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C.A. §§ 12101-12213 (1990), and the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. A jury returned a verdict in favor of defendant.
On appeal, plaintiff's principal contention is that because the proofs demonstrated he was disabled and the park inaccessible, a finding of liability under the ADA and LAD automatically follows and therefore he was entitled to a directed verdict or judgment notwithstanding the verdict (n.o.v.). Somewhat related is his challenge to the jury charge for failing to instruct that once plaintiff proposes methods for making the park accessible, the burden shifts to defendant to demonstrate they are not readily achievable without undue financial and administrative burdens. Plaintiff also claims error in barring expert testimony about the accessibility of other parks; precluding him from quoting case law in summation; and allowing defense counsel's alleged prejudicial remarks during summation. For the following reasons, we affirm.
Plaintiff is a Florida resident who occasionally travels to New Jersey to volunteer for the Advocates for Disabled Americans (AFDA), and to serve as a co-guardian ad litem for another disabled man. On one such occasion in November 2007, plaintiff visited the park and observed unpaved parking lots, no handicap designated parking, no signage indicating access to the park or alternatives to assist the disabled, and no ramp or accessible pathways to the picnic tables, playground or lake. After observing no change in these conditions in January 2008, plaintiff filed suit seeking injunctive relief by way of "access to [the]... [p]ark, to [its] benches, to [its] picnic tables, to the playground as well as the fishing[,]" and also monetary damages. Admittedly, plaintiff did not seek assistance from defendant or alert township officials to the conditions he observed prior to filing suit.
At trial, William Cody, an expert in ADA regulations, American National Standards Institute (ANSI) regulations, and barrier free construction, corroborated plaintiff's observations of the park. To make the park readily accessible to the disabled, Cody suggested creating parking spaces with striping, access aisles, and signage, and paved pathways from the parking area to the playground, picnic tables, and lake. Cody estimated the cost of these modifications to be about $9,580. The expert acknowledged, however, that the park was created in the early twentieth century, and therefore was not subject to ADA regulations applicable to "new" construction. Cody also affirmed that where access to a park is prohibited "because of the terrain or topography," the ADA permits the disabled person to be transported to the desired location "if it's feasible...."
Also testifying for plaintiff was Christopher Schultz, the township manager and ADA coordinator, who explained that while the township had neither proposed nor implemented a transition plan with specific dates for greater access to the park, it was included in the community development block grant proposal in 2009. Through that proposal, it was the township's intent "to apply for ... funding to *216 improve access to municipal facilities in future program years, including 2012." In particular, the park proposal was to create disabled "parking areas ... and a pathway to a playground area." Funding for the project was expected in 2010, and the township would then have approximately one year to implement the proposed improvements.
According to Schultz, in the interim, if a complaint were made regarding inaccessibility to township facilities, he would "either... refer it to the appropriate department to determine if they're able to assist, and if not, if it's something where [he] need[ed] to go and get information, [he] would ... do [his] own research to determine what ... needed to [be done] to assist." During his tenure with the township, Schultz had never received any complaints about access to the park.
At the close of evidence, plaintiff moved for a directed verdict, Rule 4:40-1, which the court denied, reasoning that it was for the jury to determine whether plaintiff was discriminated against. After the jury unanimously answered that question in the negative, plaintiff moved for a judgment n.o.v., Rule 4:40-2(b). The court denied this motion as well, concluding that "reasonable minds could differ on whether the defendant acted in a discriminatory manner. The jury ... obviously accepted the explanation provided by the township...."
This appeal follows.

I
Motions for a directed verdict, Rule 4:40-1, and for judgment n.o.v., Rule 4:40-2(b), are "governed by the same evidential standard: `[I]f, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied....'" Verdicchio v. Ricca, 179 N.J. 1, 30, 843 A.2d 1042 (2004) (quoting Estate of Roach v. TRW, Inc., 164 N.J. 598, 612, 754 A.2d 544 (2000)). We apply the same standard as the trial court. Boyle v. Ford Motor Co., 399 N.J.Super. 18, 40, 942 A.2d 850 (App.Div.), certif. denied, 196 N.J. 597, 960 A.2d 393 (2008). So measured, we are satisfied, as was the trial judge, that reasonable minds could find no discrimination here.
Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132. Obviously, plaintiff, who is a paraplegic, is a "qualified individual," and defendant, who owns and maintains the park, is a "public entity." 42 U.S.C.A. §§ 12131(1), (2).
Analogously, as a place of public accommodation, Thomas v. County of Camden, 386 N.J.Super. 582, 590-91, 902 A.2d 327 (App.Div.2006), the park is also subject to the LAD's prohibition against discrimination. N.J.S.A. 10:5-4; N.J.S.A. 10:5-12. Specifically, N.J.S.A. 10:5-4 provides that "[a]ll persons shall have the opportunity ... to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation" without discrimination on the basis of disability. N.J.S.A. 10:5-12 provides, in pertinent part:
It shall be ... an unlawful discrimination:
....
f. (1) For any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, *217 withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof....
In interpreting the LAD in disability discrimination claims, "federal law has consistently been considered for guidance." Borngesser v. Jersey Shore Med. Ctr., 340 N.J.Super. 369, 380, 774 A.2d 615 (App. Div.2001) (applying federal law under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. §§ 701-796, as guidance on a LAD claim) (citing Leshner v. McCollister's Transp. Sys., Inc., 113 F.Supp.2d 689, 691-92 n. 1 (D.N.J.2000); Ensslin v. Twp. of N. Bergen, 275 N.J.Super. 352, 363-64, 646 A.2d 452 (App.Div.1994), certif. denied, 142 N.J. 446, 663 A.2d 1354 (1995)); see also Chisolm v. McManimon, 275 F.3d 315, 324 n. 9 (3d Cir.2001) (confining discussion to ADA Title II "with the understanding that the principles will apply equally to the Rehabilitation Act and NJLAD claims").
To prove a violation of Title II of the ADA, a plaintiff must show:
(1) he [is] a "qualified individual with a disability"; (2) he was either excluded from participation in, or denied the benefits of,... [defendant]'s services, programs, or activities, or was otherwise discriminated against by ... [defendant]; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.
[Weinreich v. L.A. County Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir.) (quoting 42 U.S.C.A. § 12132), cert. denied, 522 U.S. 971, 118 S.Ct. 423, 139 L.Ed.2d 324 (1997) (emphasis added).]
Accord Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 553 n. 32 (3d Cir. 2007); Tyler v. City of Manhattan, 849 F.Supp. 1429, 1439 (D.Kan.1994), aff'd, 118 F.3d 1400 (10th Cir.1997).
"Recognizing that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion, Congress required the States to take reasonable measures to remove architectural and other barriers to accessibility." Tennessee v. Lane, 541 U.S. 509, 531, 124 S.Ct. 1978, 1993, 158 L.Ed.2d 820, 842 (2004); see also 42 U.S.C.A. § 12131(2). Title II "requires only `reasonable modifications' that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service." Id. at 532, 124***** S.Ct. at 1993, 158 L.Ed.2d at 842; see also 42 U.S.C.A. § 12131(2).
For facilities built or altered after 1992, Title II's implementing regulations require compliance with specific architectural accessibility standards. 28 C.F.R. § 35.151 (2011). However, for facilities constructed prior to 1992, a public entity is not "[n]ecessarily require[d] ... to make each of its existing facilities accessible to and usable by individuals with disabilities...." 28 C.F.R. § 35.150(a)(1). Rather, a public entity may satisfy Title II of the ADA by adopting a variety of less costly measures, including reassigning services to accessible facilities, assigning aides to assist persons with disabilities in accessing services, and using "accessible rolling stock or other conveyances...." 28 C.F.R. § 35.150(b)(1).
Likewise, the applicable regulations under the LAD require places of public accommodation to provide reasonable accommodations. In particular, N.J.A.C. 13:13-4.3 prohibits
an owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation to refuse, withhold from or deny an individual, either directly or indirectly, on account of that person's disability or perceived disability, access to any of the *218 accommodations, advantages, facilities or privileges of a place of public accommodation....
N.J.A.C. 13:13-4.4 provides that places of public accommodations are, "to the extent reasonable," required to accommodate "a person with a disability in the most integrated setting appropriate to the needs of that person." N.J.A.C. 13:13-4.11(a) requires all places of public accommodation to make
reasonable accommodations to the limitations of a ... [disabled] patron or prospective patron ..., including making such reasonable modifications in policies, practices, or procedures, as may be required to afford goods, services, facilities, privileges, advantages, or accommodations to a person with a disability, unless the owner, lessee, proprietor, manager, superintendent, agent or employee of the place of public accommodation demonstrates that making the accommodations would impose an undue burden on its operation.
N.J.A.C. 13:13-4.12 details a non-exhaustive list of "[a]ccommodations that may be reasonable in ... particular situation[s]," N.J.A.C. 13:13-4.12(a), including "[m]aking reasonable structural alterations[,]" N.J.A.C. 13:13-4.12(a)(2); "[c]reating designated accessible parking spaces[,]" N.J.A.C. 13:13-4.12(a)(4); and "[t]o the extent reasonable, ensuring that the path of travel ... [is] readily accessible to and useable by people with disabilities...." N.J.A.C. 13:13-4.12(a)(10). And, as noted, under N.J.A.C. 13:13-4.11(a), a place of public accommodation must make "reasonable accommodations" unless doing so would create an undue burden on its operation.
The trial court in this matter charged the jury in accordance with these principles. Specifically, the court defined discrimination as "[a] failure to provide full and equal enjoyment of public facilities and services...." It then summarized the parties' theories of the case, namely that plaintiff claimed "he was discriminated against because there was no accessible parking or access routes" in the park, and defendant "assert[ed] that its services [were] reasonably accessible such that [plaintiff] would have had access to ... [the][p]ark if he had asked for accommodation or assistance." The trial judge instructed the jury that it was plaintiff's "burden of proof ... to establish his claim by a preponderance of the evidence."
The court further instructed that defendant was "required to make reasonable modifications in its policies and practices or procedures to afford services or facilities, privileges or advantages to a person with a disability unless it shows that making the modifications demanded by the plaintiff would impose an undue burden on its operation." In considering whether an accommodation was unreasonable, the court charged the jury that they
may consider ... the overall size of the public accommodation with respect to the number of its employees, the number of its facilities and the size of its budget, the nature and cost of the accommodation, and whether the accommodation w[ould] result in a fundamental alteration to the services or program offered.
Additionally, the court instructed that "[a] public entity is not required to make structural changes in existing facilities where other methods are effective in achieving compliance." It then explained alternative ways in which a public entity could satisfy its obligation to make its services reasonably accessible, including "relocating services to alternative accessible sites, using accessible rolling stock or other conveyances, assigning aides to assist *219 persons with disabilities and accessing services...."
Contrary to these clearly expressed principles, plaintiff claims that because he was disabled and unable to access the park, he was entitled as a matter of law to both injunctive and monetary relief. Yet as our earlier discussion well demonstrates, a public facility that is not accessible without assistance does not necessarily violate Title II of the ADA or the LAD. See 28 C.F.R. § 35.150(a)(1); N.J.A.C. 13:13-4.11(a). Rather, the requirement is one of "reasonable accommodation[][,]" N.J.A.C. 13:13-4.11(a), which encompasses a variety of measures including assigning aides to assist persons of disabilities in accessing facilities. 28 C.F.R. § 35.150(b)(1). Thus, it remains plaintiff's burden to prove he was discriminated against by being denied reasonable access to the park. Weinreich, supra, 114 F.3d at 978.
The question of reasonable accommodation in this case was one for the jury to resolve, particularly in light of evidence allowing them to find that had plaintiff requested assistance, he would have been provided with such, thereby remedying the claimed physical barriers and enabling him ready access to the park in a reasonable manner. In other words, whether the park was accessible was a disputed fact, and reasonable minds could therefore have differed as to whether plaintiff was discriminated against, especially considering additional testimony about proposed improvements, including "parking areas" for the disabled and "a pathway to the playground area[,]" that would be implemented as soon as funding became available.
The cases relied upon by plaintiff do not support his claim of entitlement to relief as a matter of law. In Estate of Nicolas v. Ocean Plaza Condo. Assoc., 388 N.J.Super. 571, 576, 909 A.2d 1144 (App.Div. 2006), the plaintiff alleged that a condominium association failed to provide a disabled resident of a multiple unit condominium building a reasonable parking space accommodation, in violation of the LAD. The lower court granted the defendant's motion for summary judgment on the basis that the plaintiff's complaint was timebarred, and because the plaintiff failed to state a valid claim under the LAD. Id. at 579, 909 A.2d 1144. We reversed, finding that the complaint was not time-barred, id. at 581-86, 909 A.2d 1144; that the LAD, specifically N.J.S.A. 10:5-4.1 and 10:5-12(g), provide a cause of action for a failure to provide a condominium parking space to a unit owner, id. at 586-91, 909 A.2d 1144; and that the plaintiff showed material facts in dispute as to whether a reasonable parking accommodation was made. Id. at 591, 909 A.2d 1144. In particular, the plaintiff had shown that the disabled resident was provided with parking spaces between thirty and 150 feet from her condominium building and the defendant had been notified on several occasions of her physical and mental disabilities. Ibid. We concluded that it was for the jury to determine whether the offered accommodations were reasonable. Id. at 591-92, 909 A.2d 1144.
In Franek v. Tomahawk Lake Resort, 333 N.J.Super. 206, 210-12, 754 A.2d 1237 (App.Div.), certif. denied, 166 N.J. 606, 767 A.2d 484 (2000), the plaintiff, who was wheelchair-bound due to a double leg amputation, alleged disability discrimination in violation of the LAD when she had difficulty accessing a lake resort for a family picnic. The supervisor of the facility's parking allegedly said to a member of the plaintiff's family that he did not "want those kind of people here." Id. at 211, 754 A.2d 1237. The lower court granted summary judgment to the defendant, finding that "an owner or operator of a public *220 facility has no affirmative duty in respect of patrons which is parallel to an employer's duty to make reasonable accommodations for a [disabled] employee," id. at 214, 754 A.2d 1237, and thus the plaintiff was not denied access to the public facility. Id. at 215, 754 A.2d 1237.
We reversed, finding that it was
unquestionably a violation of the LAD for the owner or operator of a public accommodation to tell a person, either directly or indirectly, that his or her patronage is not welcome because of a trait or condition which the LAD protects from discriminatory action, even though use of the facility on the particular occasion is not denied.
[Id. at 216, 754 A.2d 1237.]
We further explained, "[i]t may well be, as defendants argue, that such a statement does not constitute a per se violation of the LAD but, because we must for summary judgment purposes accept that it was said, plaintiff's claim is insulated from dismissal at this stage." Id. at 218, 754 A.2d 1237. Thus, we held that it was for a jury to determine whether the public facility provided a reasonable accommodation. Id. at 216-19, 754 A.2d 1237.
In neither case did we find the plaintiff entitled to judgment as a matter of law simply because he was disabled and denied access to a place of public accommodation. Rather in both cases we held that the plaintiffs' disability discrimination claims should proceed to jury resolution.
Similarly here, the trial court left to the jury the disputed factual determination whether the public facility, "when viewed in its entirety, [i]s readily accessible to and usable by individuals with disabilities." Brown v. County of Nassau, 736 F.Supp.2d 602, 612 (E.D.N.Y.2010). In doing so, the court did not, as plaintiff wrongly contends, require plaintiff to first request assistance to access the park. While there is a split of authority on whether such a request is a necessary condition to establishing municipal liability, id. at 618; compare Robertson v. Las Animas County Sheriff's Dep't, 500 F.3d 1185, 1196 (10th Cir.2007) with Bacon v. City of Richmond, 386 F.Supp.2d 700, 707 (E.D.Va.2005), rev'd on other grounds, 475 F.3d 633 (4th Cir.2007), the trial judge in this case merely decided it was for the jury to resolve plaintiff's discrimination claim by determining what is reasonable and readily accessible under these particular circumstances. One such circumstance was the township's assurance that plaintiff would have had access to the park if he had asked for accommodation or assistance. Because plaintiff bore the burden of proving his claim, the matter was properly reserved to the jury, and accordingly there was no error in the denial of plaintiff's motions for a directed verdict and judgment n.o.v.

II
Plaintiff nevertheless contends that once he proposes methods of making the park readily accessible, the burden shifts to defendant to prove they are not achievable without undue financial and administrative burdens. We disagree and therefore find no error in omitting such a notion from the court's jury instructions.
Once a plaintiff establishes a prima facie case of discrimination under Title II of the ADA, "a defendant may assert an affirmative defense by demonstrating that the requested actions would result in undue financial and administrative burdens." Greer v. Richardson Indep. Sch. Dist., 752 F.Supp.2d 746, 753 (N.D.Tex.2010); accord Gorman v. Bartch, 152 F.3d 907, 911 (8th Cir.1998) (same); see also 28 C.F.R. 35.150(a)(3) (stating public entity has "the burden of proving" *221 the existence of undue financial or administrative burdens). While it seems only reasonable for the proponent of the affirmative defense to prove the existence of undue financial or administrative burdens, where the defense is simply that a reasonable alternative means of access exists, the burden of proof does not shift.
The case of Hall v. St. Joseph's Hospital, 343 N.J.Super. 88, 777 A.2d 1002 (App. Div.2001), certif. denied, 171 N.J. 336, 793 A.2d 715 (2002), is instructive. In Hall, the plaintiffs, family of the decedent, a deaf man, alleged that the defendant failed to provide the decedent with American Sign Language interpreters, in violation of the ADA, the Rehabilitation Act, and the LAD. Id. at 92, 777 A.2d 1002. The jury found for the defendant, finding that the decedent was not discriminated against. Id. at 93, 777 A.2d 1002.
On appeal, the plaintiffs argued, among other things, that the court erred by instructing the jury that they retained the burden of proof on each issue throughout the case. Id. at 108, 777 A.2d 1002. They contended that once they established their prima facie case, the burden of proof shifted to the defendant, and the judge erred in not so instructing. Ibid. In rejecting the plaintiff's arguments, we explained:
[a]lthough we acknowledge that some cases suggest that the burden of proof does shift to defendant to counter a prima facie case of lack of reasonable accommodation to a disability, a close reading of these cases suggests that whether the defendant assumes a burden of production or a burden of proof on a specific issue depends on the nature of the defense.
If a defendant's response to a reasonable accommodation claim is that that accommodation would be unduly burdensome or an undue hardship, this defense is considered an affirmative defense and the defendant assumes the burden of proof on this issue. If, however, the defense is that an alternative effective means ... was used, the burden of proof does not shift.
[Id. at 108-09, 777 A.2d 1002 (internal citations omitted).]
See also Pierce v. County of Orange, 526 F.3d 1190, 1217 (9th Cir.) (noting that in a Title II ADA case, it is the plaintiff's burden to establish the elements of a prima facie case, and then "[t]he public entity may ... rebut this by showing that the requested accommodation would require a fundamental alteration or would produce an undue burden"), cert. denied, 555 U.S. 1031, 129 S.Ct. 597, 172 L.Ed.2d 456 (2008).
Here, like the plaintiffs in Hall, defendant's primary theory of the case was not that a reasonable accommodation was not possible or unduly burdensome. Rather, as the court instructed in its charge, defendant's theory was that "its services [were] reasonably accessible such that [plaintiff] would have had access to ... [the] [p]ark if he had asked for accommodation or assistance." Plaintiff never objected to that portion of the charge. Thus, because defendant claimed it would have employed an alternative effective means of access had plaintiff requested it, the court was not obligated to instruct that it was defendant's burden to prove that plaintiff's proposed methods of making the park readily accessible were not achievable and would cause undue financial and administrative burdens.

III
We have considered plaintiff's remaining contentions and deem them without sufficient merit to warrant extended discussion. R. 2:11-3(e)(1)(E). Suffice it to say, we discern no abuse of discretion in precluding plaintiff's expert from testifying *222 about the lack of access to other township parks, Hisenaj v. Kuehner, 194 N.J. 6, 12, 942 A.2d 769 (2008); Pressler & Verniero, Current N.J. Court Rules, comment 4.7(b) on R. 2:10-2 (2012), because defendant never argued that other township facilities would have provided plaintiff with access to public accommodations sufficient to comply with the ADA and LAD. As for defense counsel's comments in summation describing plaintiff as a serial litigator, the court's cautionary instruction was sufficient to cure any potential for prejudice, and plaintiff's counsel was permitted to respond in kind that "[t]he only way you get accessibility is through lawsuits in most cases...."
Affirmed.