**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1260-20

M.M.,[1]

    Plaintiff-Appellant,

v.

STOCKTON UNIVERSITY,

    Defendant-Respondent.

_____

Argued December 14, 2021 – Decided February 25, 2022

Before Judges Currier and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-0176-18.

Steven D. Cahn argued the cause for appellant (Cahn & Parra, Inc., attorneys; Steven D. Cahn, on the briefs).

John D. North argued the cause for respondent (Greenbaum, Rowe, Smith & Davis, LLP, attorneys; John D. North, of counsel and on the brief; Alexander W. Raap, on the brief).

_____

[1] In light of the sensitive issues discussed here, we use initials to protect the party's privacy. R. 1:38-3.

PER CURIAM

Plaintiff alleges that while he was a student at Stockton University, he suffered from depression that debilitated him to the extent that he could not leave his apartment, was missing course assignments, and skipping classes. He sought treatment at the University's Wellness Center.

Plaintiff also spoke with the professors of his three classes, informing them of his condition and requesting their cooperation in an effort to avoid failing the courses. Two of the three professors agreed to give him additional time to successfully complete their courses. A third professor told him that, due to the nature of the class, plaintiff could not make up the missed work and the professor suggested plaintiff withdraw from the course. Because the date to withdraw from a class without penalty had passed, the only option available to avoid failing the class was to apply for a medical withdrawal. After the University denied the request for the medical withdrawal, plaintiff received a failing grade in the third course.

In his complaint, plaintiff alleged the University violated the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50, when it failed to accommodate his disability—depression. Defendant's first motion for summary judgment was unsuccessful. However, the trial court granted defendant's second

2

motion for summary judgment, finding plaintiff required a medical expert to prove he had a disability and to establish his depression was so severe that he was disabled.

Because plaintiff presented sufficient evidence to support the finding of a disability and, therefore, demonstrated a prima facie case of a failure to accommodate his disability, we reverse.

The 2016-17 school year was plaintiff's fourth year attending Stockton. Even if plaintiff had successfully completed his coursework that year, he still needed additional credits to achieve his undergraduate degree. He testified during his deposition that he began to suffer from depression during the early winter months of 2017. He stated he felt "an inability to concentrate and an inability to focus on [his] schoolwork." He began to experience "suicidal thoughts," could not get out of bed, rarely left his apartment, and was not participating in his regular activities. He also stopped going to class.

On March 17, 2017, while out with friends, plaintiff experienced what he described as a breakdown. Ten days later, he sought help from Stockton's Wellness Center on campus.

Plaintiff was evaluated by Michael Levin, MS, LPC, LCADC, the Assistant Director of Counseling Services at the Wellness Center, who

diagnosed plaintiff with major depressive disorder. In a document titled "Learning Access Program Documentation of Diagnosed Disability," Levin indicated that plaintiff was "[u]nable to sleep, [had] difficulty attending class, [and was] not completing assignments." Levin noted plaintiff "presented with anxiety and depression symptoms throughout the period of treatment. Depression worsened in the past week." Under the titled entry "Suggested Accommodations," Levin recommended Stockton accommodate plaintiff with "extensions on exams and classwork when symptomatic." Plaintiff attended weekly sessions with Levin until the end of the school year in April 2017.

The deadline to withdraw from a class without an academic penalty for the spring semester was April 7, 2017. Plaintiff did not request withdrawals from any of his courses prior to that date.

On April 28, 2017, the last day of the spring semester, plaintiff met with Patricia McConville, the Coordinator of Services for Students with Disabilities in the University's Learning Access Program (LAP). McConville gave plaintiff an Accommodation Request Form that he could use to request accommodations for his fall 2017 courses.

The first sentence of the printed form stated: "This form certifies that the following student has presented the necessary documentation to authenticate

4

his/her disability."  McConville found accommodations were necessary, stating on the form:

> Symptoms associated with medical condition are unpredictable, episodic in nature, and with varying degrees of severity.  Please consider an occasional extension of due dates and/or rescheduling of exams.  When symptomatic student will email faculty to justify need for extension/absence.  Symptoms related to medical condition may impact ability to arrive to class on time under certain conditions.  Please allow student briefly leave class when necessary.

Plaintiff was enrolled in three courses in the Spring 2017 semester.  As stated, in April 2017, plaintiff contacted his professors seeking help with missed assignments and classes.  In doing so, he disclosed to each professor his diagnosis of depression and described his difficulty performing everyday activities, including attending class and completing coursework.

He was able to reach an informal agreement with one of the professors, who permitted him to turn in his term paper late and take the final exam.  The professor of a second course required plaintiff to sign an agreement, under which plaintiff had until September 2017 to complete the remaining assignments for the course.  The form stated "[m]edical [i]ssue[s]" as the reason for the incomplete work.  The agreement was signed by plaintiff, the professor, and an assistant dean.  Therefore, this was an accommodation approved by defendant.

A-1260-20

The professor of the third course—Senior Synthesis—told plaintiff he could not accommodate his request for an extension to complete missed classwork and fulfill the course requirements. The professor provided several reasons for his decision, notably that the nature of the course "is developing the ability to communicate in group discussions, to present ideas clearly, to carefully consider complex ideas presented by others and respond with constructive contributions to group discussion, and more generally to communicate professionally and intelligently in a structured interaction." The deadlines were "firm" because "they [were] an integral part of the coursework." Therefore, it was not possible for plaintiff to make up the class "without actually taking part in the course itself."

The professor also served as plaintiff's academic advisor. He gave plaintiff only one option: complete the paperwork for an incomplete grade and retake the course the next semester. He also advised plaintiff to seek a medical withdrawal from the class.

Because plaintiff could not complete Senior Synthesis, and the deadline to withdraw from a class without an academic penalty had already passed, plaintiff had to request a medical withdrawal. He submitted the request on May 9, 2017.

A-1260-20

Along with his documents from the Wellness Center and LAP, plaintiff also provided a note from his personal physician, Michael Findura, D.O., dated April 24, 2017, stating, "Patient has major depressive disorder." In a subsequent May 5, 2017 letter to the University, Dr. Findura stated that plaintiff was "recently diagnosed with major depressive disorder and is having difficulty completing tasks, concentrating and reading. Due to this medical condition, I recommend a medical withdrawal from his class."

After plaintiff filed the request for a medical withdrawal, the professor teaching the Senior Synthesis course advised the provost's office he was in favor of permitting plaintiff to retroactively withdraw from his course.

On June 1, 2017, the Office of the Provost denied plaintiff's request stating,

> We cannot justify granting a medical withdrawal for one course in the term, as you successfully completed other courses in the Spring 2017 term under the same circumstances. If you wish to submit an appeal for a medical withdrawal from all of your courses in the Spring 2017 term, we would consider it.

Plaintiff received an F in the Senior Synthesis course.

In plaintiff's complaint, he alleges Stockton violated the LAD in failing to grant him a reasonable accommodation despite his medical condition or disability which resulted in him failing the Senior Synthesis course. After the

7

close of discovery, defendant moved for summary judgment, asserting the University's refusal to permit plaintiff to withdraw from the Senior Synthesis course was not discriminatory because he only sought, and was granted, an accommodation for the Fall 2017 semester, not the Spring 2017 semester.

Defendant contended it complied with its policy which does not permit a student to withdraw from a course after the class has concluded and grades have been issued. Defendant also asserted that plaintiff's request for a medical withdrawal was not an accommodation as defined under the LAD. Because plaintiff could not demonstrate a prima facie case of discrimination, defendant asserted it was entitled to summary judgment.

In denying the motion, the judge stated: "[T]here is no dispute that plaintiff has a disability and that he was able to perform the activity having not had the disability. So, the whole issue is whether or not he was denied the benefit of the program or discriminated against because of the disability." The judge further explained that

> it's documented that he's suffering from depression, both his family doctor and then through Stockton's program. They determined that he is suffering from depression and he really—he testifies that it paralyzed him; he couldn't do anything, he wasn't doing anything and he did go to all three teachers and indicate that he needed some kind of an accommodation . . . . But when you look at what the provost's office did . . . it doesn't

A-1260-20

appear that they did any kind of in depth or any real investigation into all of the medical records or anything like that . . . . They just determined that it was late, it was in violation of the policy, or not compliant with the policy and they denied the request . . . asking for an accommodation.

The judge denied the motion

because there are many issues of fact in this case. [W]hether it was discriminatory to deny this medical withdrawal; given the facts of the case, given that . . . because of the nature of those [other two] classes he was able to get an accommodation and complete those classes and whether it was discriminatory to not allow him to withdraw from . . . the Senior Synthesis class as an accommodation . . . . I think a reasonable juror could reject Stockton's reasons for denying the medical withdrawal [request] after the semester ended and I think there's questions of credibility on both sides.

Several months later, defendant renewed its motion for summary judgment. The University asserted plaintiff had not presented sufficient proofs of a disability that prevented him from completing the Senior Synthesis class. Stockton stated plaintiff required testimony of a witness competent to give testimony regarding his disability and specifically whether the disability prevented him from completing his coursework.

In opposing the motion, plaintiff contended Stockton had already conceded he was disabled. He pointed to the accommodation form McConville

9                                                                          A-1260-20

signed in April 2017 in which she verified that plaintiff had "presented the necessary documentation to authenticate his disability."

The court found McConville's form was not relevant to whether Stockton had acknowledged plaintiff's disability. Although the judge stated she did not doubt plaintiff's testimony that he was depressed, she determined that plaintiff required expert medical testimony to satisfy the first prong of an LAD failure to accommodate a disability action. Therefore, the court granted defendant summary judgment on December 18, 2020.

Our review of a trial court's grant or denial of a motion for summary judgment is de novo. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). We apply the same standard as the motion judge and consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). See Rozenblit v. Lyles, 245 N.J. 105, 121 (2021); R. 4:46-2(c).

"To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original)

A-1260-20

(quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)).  "Summary judgment should be granted . . . 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Friedman, 242 N.J. at 472 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

To determine the extent of the protection afforded to disabled persons under the LAD, we must look to the analytical framework of the Rehabilitation Act (RA), 29 U.S.C. § 794, and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 to -12213.  J.T. v. Dumont Pub. Sch., 438 N.J. Super. 241, 263 (App. Div. 2014).

In a failure to accommodate a disability case under the RA and ADA standards, plaintiffs are required to show they "(1) had a disability; (2) [were] otherwise qualified to participate in the activities or program at issue; and (3) [were] denied the benefits of the program or otherwise discriminated against because of [their] disability."  Id. at 264 (citing Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009)).  If the plaintiff can meet this burden, the question then becomes whether the accommodation was reasonable.  Lasky v. Moorestown Twp., 425 N.J. Super. 530, 539-44 (App. Div. 2012);

<u>Ellison v. Creative Learning Ctr.</u>, 383 N.J. Super. 581, 595-96 (App. Div. 2006). The defendant may argue as an affirmative defense that the requested accommodation created an undue burden on the defendant. <u>Hall v. Saint Joseph's Hosp.</u>, 343 N.J. Super. 88, 108-09 (App. Div. 2001).

The trial court found plaintiff failed to satisfy the first prong as he lacked expert testimony to support the finding of a disability. We disagree. Plaintiff testified he was depressed and he described the effect the condition had on him including an inability to get out of bed, leave his apartment, attend class, complete coursework, and participate in any of his usual activities. He also described having suicidal thoughts. He sought help from the University's Wellness Center where he was diagnosed with major depressive disorder and attended counseling sessions until the semester ended. He also saw his family physician who diagnosed him with major depressive disorder.

Moreover, when plaintiff applied for an accommodation in April 2017, the University's Coordinator of Services for Students with Disabilities certified on the accommodation form that "[plaintiff] has presented the necessary documentation to authenticate his/her disability."

According to defendant, the accommodation form was for the 2017 <u>Fall</u> semester classes. Nevertheless, the program coordinator found in <u>April</u> 2017

that plaintiff had a disability that required accommodation—meaning he demonstrated a disability at the time she executed the form.

We are satisfied plaintiff presented sufficient proofs of a disability to withstand summary judgment on his claims. In its decision on the first summary judgment motion, the court stated, "[T]here is no dispute that plaintiff has a disability." After hearing the second motion, the court agreed with defendant's new argument that there was not sufficient expert testimony regarding the disability to support the LAD claim.

Two experts—one employed by the University specifically to treat students who require counseling—have diagnosed plaintiff with major depressive disorder. Those experts and plaintiff can be cross-examined as to the extent of plaintiff's disability and whether it prevented him from attending classes and completing coursework. But, as the trial judge initially found, there is no evidence refuting the diagnosis. To the contrary, the diagnosis was made by the University's own Wellness Center personnel. Another University employee certified plaintiff was suffering from a disability severe enough that he would require an accommodation for the next semester—an acknowledgment that plaintiff had shown evidence of a disability that would continue and require future accommodations. With those proofs, rendered and accepted by its own

13

employees, defendant cannot sustain its argument that there was insufficient evidence of a disability.

In finding plaintiff had not established he suffered from a disability, the trial court rejected McConville's April 28, 2017 form because she found it was a ruling from an administrative proceeding and, therefore, inadmissible in a Superior Court proceeding. This was a misapprehension of the circumstances. McConville was the University's Coordinator of services for students with disabilities. She interviewed students who presented with a disability to discuss their needs for the determination of reasonable accommodations. This was not an administrative agency proceeding; it was the University implementing its own policy to afford students with disabilities "equal access for academic success."

The trial court's reliance on Clowes v. Terminix Int'l., Inc., 109 N.J. 575 (1988) was misplaced. In Clowes, the plaintiff alleged he was terminated because of his alcoholism. Id. at 583-84. In considering whether the plaintiff had established a prima facie case of discrimination, the Supreme Court found the plaintiff did not sustain his burden of proving he was handicapped—as an alcoholic—at the time of his discharge. Id. at 597. The Court noted that "[c]onspicuously absent from the record is any testimony from a treating or

examining physician that [the plaintiff] had been diagnosed as an alcoholic." Ibid.

Because the plaintiff's only proof of alcoholism was his own testimony and a partial medical record in which "alcoholism" was handwritten after the entry of "Diagnoses," the Court found the evidence was "insufficient to prove that he suffered from [alcoholism]." Id. at 598. The Court stated that "[g]iven the complexity of the many diagnostic procedures involved, expert medical testimony is required to establish the fact of the employee's alcoholism." Id. at 597.

The circumstances here differ from those in Clowes. Plaintiff has two diagnoses of major depressive disorder—from his personal physician and a licensed professional counsel or employed by the University in its Wellness Center. As stated, these witnesses can be cross-examined regarding the degree of plaintiff's disability and to what extent it affected his ability to complete the Senior Synthesis course. The trier of fact will determine whether the University's denial of the requested accommodation was reasonable.

Reversed and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1260-20