**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3576-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SHAKIRA A. LASISI,

    Defendant-Appellant.

_____

Argued September 30, 2024 – Decided December 12, 2024

Before Judges Gummer and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Municipal Appeal No. 16-22.

Shakira A. Lasisi, appellant, argued the cause pro se.

Alexis R. Agre, Assistant Prosecutor, argued the cause for respondent (LaChia L. Bradshaw, Burlington County Prosecutor, attorney; Alexis R. Agre, of counsel and on the brief).

PER CURIAM

Defendant Shakira A. Lasisi appeals from a Law Division order affirming her conviction in municipal court for disorderly conduct pursuant to N.J.S.A. 2C:33-2(a)(1). Defendant raises eight issues on appeal, which may be grouped into three main arguments. First, defendant argues she had ineffective assistance of counsel during both the municipal court trial and the Law Division trial, and both courts violated her Americans with Disabilities Act[1] ("ADA"), Health Insurance Portability and Accountability Act[2] ("HIPAA"), and protected-speech rights. Defendant did not raise these arguments before the Law Division. Second, defendant contends the municipal court and Law Division erred in admitting hearsay statements and out-of-court identifications. Finally, defendant maintains the Law Division's findings were reached based on insufficient evidence in the record. Having reviewed the record in light of all applicable legal principles, we affirm.

I.

We glean the following facts from the record. On November 10, 2021, Burlington Township Police Department charged defendant with terroristic threats in violation of N.J.S.A. 2C:12-3(b). This third-degree charge was

_____

[1] 42 U.S.C. §§ 12101-12213.

[2] 42 U.S.C. §§ 1320d to 1320d-9.

downgraded by the Burlington County Prosecutor's Office to the petty disorderly persons offense of disorderly conduct in violation of N.J.S.A. 2C:33-2(a)(1). The downgraded charge was tried in Burlington Township municipal court on November 29, 2022.

At the municipal court trial, Gregory Ackles, defendant, and defendant's father Alliu Lasisi testified.  Ackles, who is Black, testified that when he came home on the night of November 2, 2021, defendant was cutting the lawn of her father's house, which was next door to Ackles' residence.  Ackles testified defendant started to yell at him, threw a trash bag at him, used racial slurs and derogatory language, and threatened to kill him.  Defendant then went to her car and played "loud rap music" that "talk[ed] about killing n[*****]s."  Ackles testified defendant made additional threats to "kill [his] f[*]cking ass."

Ackles testified about another interaction with defendant, which he believed occurred on November 7, 2021.  On that date, his nephew told him the neighbor's daughter was "cussing him out" and almost hit him with her car. Defendant objected to this testimony, but the municipal court found the statements were not offered by the State for the truth of the matter asserted.  In his testimony, Ackles stated defendant returned later on November 7, 2021 to Ackles' home and called him "a black motherf[*]cker" and "black n[*****]."

Defendant then stated she was going to "kill [his] black ass" and she was going to have her "boys from Brooklyn come down and kill [Ackles'] f[*]cking ass" because Ackles had "f[*]cked with [defendant's] father." When police arrived, Ackles described defendant's behavior and the car she drove and reported her license plate number. Ackles filed a police complaint a few days later.

Representing herself, defendant cross-examined Ackles. During the cross-examination, defendant asked:

> Mr. Ackles, is it possible, because you are not sure of a lot of facts within this case, in addition to telling the police officer that you did not know who was speaking with you that night until [the prosecutor] introduced you to me, could it be possible that you have the wrong person?

Ackles responded he was certain defendant was the person who had called him racial slurs and threatened him, in part because defendant's stepmother had apologized for defendant's behavior towards Ackles. Ackles testified in response to defendant's question:

> I can tell you because after that incident your stepmother knocked on my door and apologized for your behavior, because what she said to me, and I'm going to quote her, "That is not my daughter, that's my husband's daughter. My children do not act like that, you know my children," which I do.

A-3576-22

Ackles further testified that because defendant's stepmother had reached out to him to apologize approximately three days after the November 7, 2021 incident, he knew defendant was the person who had threatened him. During cross-examination, Ackles testified, "I told the police officer exactly what type [of] car you were driving and exactly what your license plate was."

On redirect examination by the prosecutor, Ackles identified defendant in court as the person who had approached him on November 2, 2021 and November 7, 2021:

> Q: Not to beat a dead horse, Mr. Ackles, but regardless of the conversation that you had with Ms. Lasisi's stepmother before you came to the police station, is the woman sitting to my right, directly in front of you, the woman who approached you . . . around the 2nd . . . and the 7th, and said those things to you that you have placed on the record here today?
>
> A: Absolutely, sir.

Defendant called her father as a witness. Mr. Lasisi testified he was home on November 2, 2021, defendant was not at his home that night, and, thus, she was not present at the alleged November 2, 2021 incident. During defendant's direct examination of Mr. Lasisi, she asked: "Was there anybody there besides me, did you see anybody there that day?" Mr. Lasisi answered, "No, there was nobody. I mean, besides me -- me being inside the house, nobody was there."

5

On cross-examination, when asked what Mr. Lasisi was doing during the night of November 2, 2021, he answered: "I was in my house sleeping . . . . or I was doing something inside the house, how am I going to know all that?" Contrary to Ackles' testimony, Mr. Lasisi stated on November 7, 9, and 10, 2021 no Lasisi family members were in Ackles' presence.

Defendant was the last witness to testify. Defendant testified she was not at her father's residence on November 2, 2021. Defendant added as "a person with [a] disability," she would not approach "an unknown male" or perform "lawn care." She further testified she does not listen to rap music but explained terms used in rap music are not intended to be racial slurs. She contested Ackles' testimony that the music defendant had played contained a racial slur. Defendant concluded her testimony by adding she drives different vehicles as a part of her profession and "did not only drive any type of BMW or Mercedes-Benz."

The municipal court found defendant guilty of the petty disorderly persons offense of disorderly conduct. It found Ackles' testimony credible because he was "matter of fact" and "pretty consistent in indicating that, at or about the time of the alleged incidents, that this inexplicable conduct from Ms. Lasisi did occur and he was very adamant in indicating the nature of the threatening conduct, the

6

racial content [of] the language used." It also found Ackles had identified defendant during his re-direct examination and had been "very clear and adamant" defendant was the person outside of his home on November 7, 2021, who "made these threats of violence and [used] these racial slurs towards him."

The municipal court did not find defendant's father credible, noting Mr. Lasisi's testimony he had been inside of the house during the alleged incident and "was asleep at one point" and that Mr. Lasisi had "a reason to be biased" because he is defendant's father. The court also found Mr. Lasisi's "testimony lacked any kind of clarity, any . . . kind of consistency" regarding what he had or had not witnessed at the time of the incident.

Similarly, the municipal court did not find defendant's testimony to be credible, citing its lack of consistency. The court found defendant had provided "no corroboration, no testimony, no documentation, nothing that would corroborate her naked assertion that she was just . . . not in the area and could not have been the person that Mr. Ackles complains about in this complaint."

The municipal court found defendant had approached Ackles on November 7, 2021, and made threats and used language in an attempt to intimidate and to harass him with criminal intent. Thus, it found her guilty of disorderly conduct. Before the court impos[ed] the sentence, defendant claimed

she had an attorney in this matter, and she planned to file an appeal. The court imposed a ten-day jail sentence, which it suspended conditioned on defendant's completion of one year of probation, and imposed certain fines and costs: a $500 fine, $33 in court fees, $50 in a Violent Crime Compensation Board penalty, and a $75 Safe Neighborhood Assessment.

Defendant appealed the municipal court order in the Law Division and raised four issues: (1) the municipal court should have excluded hearsay statements made by the police, and defendant was entitled to "an adverse inference regarding the purported identification of defendant by police"; (2) the municipal court erred when it admitted hearsay "regarding alleged police statements and alleged statements by defendant's father's wife"; (3) the Law Division should find the evidence before the municipal court was "insufficient for the State to meet its burden to convict defendant beyond a reasonable doubt"; and (4) the municipal court erred in denying defendant a stay of the matter while the appeal was pending.

Reviewing the municipal court's decision de novo, the Law Division found defendant guilty of disorderly conduct beyond a reasonable doubt. Relying on the record, the Law Division deferred to and agreed with the municipal court's credibility determinations, except it found it difficult to determine whether Mr.

Lasisi was credible because defendant had asked leading questions throughout her direct examination of him. The Law Division concluded, regardless of Mr. Lasisi's credibility as a witness, his testimony had very little value in determining defendant's innocence or guilt. It also found defendant not credible, in part because when she asked her father "about November 2nd, which she denied being at her family's home. . . . she asked the question . . . 'Was there anybody besides me, did you see anybody there that day?' The [c]ourt conclude[d] . . . [defendant] slipped and consider[ed] [it] an admission that she was present." In addition, the Law Division found defendant was not credible because she had testified she did not listen to rap music but "then proceeded to testify at length about her knowledge of rap music." It held Ackles was credible because he had provided "straight answers" and "good explanations."

The Law Division found no error, plain or otherwise, in Ackles' in-court identification of defendant, noting defendant had asked Ackles if he was certain of his identification and did not object when Ackles identified defendant during the municipal court trial "at least four times."

After reviewing the municipal court record de novo, the Law Division found defendant guilty and affirmed the monetary aspects of the municipal

court's sentence but did not impose a prison term or probation, concluding the monetary aspects of the sentence "sufficient." This appeal followed.

Defendant raises the following issues on appeal:

POINT I:
DEFENDANT HAD INEFFECTIVE ASSISTANCE OF COUNSEL DURING HEARING LEADING TO TRIAL, INCLUDING THE DE NOVO REVIEW, WHICH WOULD HAVE LIKELY RESULTED THE [sic] DEFENDANT FOUND NOT GUILTY

POINT II:
BOTH TRIAL COURTS FAILED TO ENGAGE IN AN INTERACTIVE PROCESS CONCERNING HER [AMERICANS WITH DISABILITIES ACT ("ADA")] TITLE II ACCOMMODATION REQUEST AND LIMITING DIVULGENENCE [sic] OF FEDERALLY PROTECTED HIPAA INFORMATION TO THE COURT THROUGH HER ATTORNEY SOLELY

POINT III:
THE TRIAL COURTS FAILED BY EXCLUDING DEFENDANT'S DISCOVERY DOCUMENTS, PLAINTIFF'S DISCOVERY DOCUMENTS, ACKLES SUBPEONA [sic] DUCES TECUM

POINT IV:
THE TRIAL COURT ERRED WHEN THEY AGREED THE DEFENDANT FAILED TO MAKE OBJECTIONS TOWARDS THE OPENED DOOR TO IN-COURT AND OUT-OF-COURT IDENTIFICATIONS

POINT V:
THE TRIAL COURTS ERRED WHEN THEY HAD BEARING [sic] ON THE FACT OF DEFENDANT'S ACCUSED CHOICE OF RAP MUSIC AND LYRICAL CONTENT SPEARING [sic] VIOLENCE

II.

Our review of a Law Division's findings made after a de novo hearing is "focus[ed] on whether there is 'sufficient credible evidence . . . in the record' to support the trial court's findings." State v. Robertson, 228 N.J. 138, 148 (2017) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)); see also State v. Mellody, 479 N.J. Super. 90, 108 (App. Div. 2024). We do not engage in "independent fact-finding" but instead are "governed by the substantial evidence rule." State v. Heine, 424 N.J. Super. 48, 58 (App. Div. 2012).

We should defer especially when "two lower courts have entered concurrent judgments on purely factual issues" and "ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." State v. Locurto, 157 N.J. 463, 474 (1999). However, we consider the Law Division's legal rulings de novo. Robertson, 228 N.J. at 148; see also State v. Kuropchak, 221 N.J. 368, 383 (2015).

Ineffective Assistance of Counsel Claim.

On appeal, defendant argues she had ineffective assistance of counsel before both courts. Defendant claims she had counsel when she appeared in municipal court but "requested counsel [] submit a Substitution of Attorney form

after continuous errors." Defendant argues if "legal counsel [had] not display[ed] this type of behavior, this very well could have led the defendant from going to trial with counsel and ultimately found not guilty."

Defendant's claims are belied by the record. Defendant waived her right to counsel when she appeared self-represented before the municipal court. See Rodriguez v. Rosenblatt, 58 N.J. 281, 295 (1971) (holding indigent defendants who are charged and likely face imprisonment or another consequence of magnitude have a right to assigned counsel unless the defendant decides to proceed self-represented). Although defendant claims she consulted with various attorneys, it is undisputed she appeared self-represented and waived her right to be represented by counsel. The municipal court judge stated: "[y]ou previously waived your right to an attorney. You [are] appearing pro se and today is the trial date." Defendant did not dispute that statement. Defendant did not, and does not on appeal, name her purported legal counsel, nor is there mention of any legal counsel for defendant in the municipal court record, apart from defendant asserting, immediately before the municipal court sentenced her, that she "did have an attorney on file." Although she may have consulted with an attorney, no attorney filed a notice of appearance, and defendant voluntarily proceeded self-represented, conducting all examinations.

Citing State v. Preciose, 129 N.J. 451, 463-64 (1992), defendant also argues she had ineffective assistance of counsel before the Law Division. Defendant claims her attorney, "nonchalantly affirm[ed] and/or suggest[ed] defendant's admission of guilt" in the brief submitted to the Law Division and his actions "changed the course of the de novo review outcome." Additionally, defendant suggests her counsel made her ADA accommodation requests "nonchalantly" and failed to request transcripts from the municipal court, rendering him ill-prepared before the Law Division.

To determine whether a defendant's right to effective counsel was violated, we apply the two-prong test from Strickland v. Washington, 466 U.S. 668, 687 (1984), which was adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). "[A] criminal defendant is entitled to the assistance of reasonably competent counsel, and . . . if counsel's performance has been so deficient as to create a reasonable probability that these deficiencies materially contributed to defendant's conviction, the constitutional right will have been violated." Fritz, 105 N.J. at 58. Under the two-prong Strickland-Fritz test, a defendant needs to prove the following: (1) the attorney's "performance was deficient" and (2) the "deficient performance prejudiced the defense." Id. at 52 (quoting Strickland, 466 U.S. at 687).

Although defendant retained counsel for the Law Division appeal, we perceive no merit to this ineffective-assistance-of-counsel claim because, contrary to her assertions, defendant's attorney did not implicate defendant in the Law Division brief and had requested the municipal court transcript, which he cited in his brief and upon which the Law Division relied. Thus, the factual premise on which she bases her ineffective-assistance claim is not supported by the record.

ADA and HIPAA Claims.

Defendant also argues, without providing any specifics, she requested ADA accommodations from the municipal court and before the Law Division that were not honored. Before her municipal-court trial, defendant sent an email in which she informed the court she would be "in attendance via crutches," "will not[ ]be able to stand when the court asks due to existing [redacted] condition and foot injury," "will need to utilize [her] glasses and eye drops," and will "bring in a refreshment due to medical conditions." She also requested if there "is not room in the front for seating, [she] will need a separate chair to sit as it [is] difficult to bend [her] legs." Finally, defendant asked the municipal court to "allow[] time for answering instead of screaming []or over talking due to African language barriers and other medical related conditions." The ADA

14

administrator for the Burlington Township Municipal Court was made aware of defendant's ADA requests, and defendant was informed "the accommodations [will] be provided for you." Defendant did not raise any alleged violations of the ADA by the municipal court before the Law Division during her de novo trial. On appeal, defendant fails to identify any accommodation request that was not provided by the municipal court.

Title II of the ADA prohibits discrimination in places of public accommodation, including state courts. 42 U.S.C. §§ 12131-12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."). State courts are required to provide reasonable modifications to accommodate people with disabilities. See Lasky v. Moorestown Twp., 425 N.J. Super. 530, 539 (App. Div. 2012) ("'Recognizing that failure to accommodate . . . will often have the same practical effect as outright exclusion, Congress required the [s]tates to take reasonable measures to remove architectural and other barriers to accessibility.' . . . Title II 'requires only "reasonable modifications" that would not fundamentally alter the nature of the service provided . . . .'") (quoting Tennessee v. Lane, 541 U.S. 509, 531 (2004)).

15

The municipal court did not violate Title II of the ADA and provided defendant with the accommodations she requested. Defendant's attorney submitted a request for an ADA accommodation on her behalf in her appeal before the Law Division. Before us, defendant claims she requested an adjournment of her trial because she was not in New Jersey and "her employer did not provide the accommodation to go to her hearing via Zoom." Relying on Title II of the ADA and Rule 4:36, defendant maintains her trial before the Law Division should have been postponed so she could attend in person. However, defendant's attorney submitted an ADA accommodation request in which "[d]efendant request[ed] the court [] reschedule the motion for argument without [d]efendant's appearance." Pursuant to this request, defendant asked to "be excused from appearing at the motion hearing to prevent further impact on her mental health" because the "charges and the proceedings against [defendant] have aggravated her . . . health issues." The Law Division granted her request and excused her from the hearing. Defendant was not denied access to the court; she waived her right to appear at the de novo Law Division trial, which was within her rights. See State v. Taimanglo, 403 N.J. Super. 112, 121 (App. Div. 2006).

Defendant claims her HIPAA rights were "compromise[ed]," without specifying how they were affected. "HIPAA 'concerns the protection of personal medical information and regulates its use and disclosure by "covered entities." '" Smith v. Datla, 451 N.J. Super. 82, 89 n.4 (App. Div. 2017) (quoting Cmty. Hosp. Grp., Inc. v. Blume Goldfaden Berkowitz Donnelly Fried & Forte, P.C., 381 N.J. Super. 119, 125 (App. Div. 2005)). A court is not a covered entity pursuant to HIPAA, and defendant's HIPAA claim is without merit.

Protected Speech Claims.

Relying on State v. Skinner, 218 N.J. 496 (2014), defendant claims the municipal court and Law Division erred in finding the content of the rap music relevant and, citing United States v. Bartow, 997 F.3d 203 (4th Cir. 2021), argues the language in the rap music did not cause violence. However, the Law Division did not rely on the content of the rap lyrics in finding defendant guilty but instead considered defendant's testimony demonstrating "her knowledge of rap music," when determining her credibility. The Law Division did not use rap lyrics as evidence of defendant's motive or intent. Instead, it found defendant's extensive testimony regarding rap music contradicted her claim she does not listen to rap music in its assessment of her credibility. Defendant's First Amendment right to protected speech was not violated because the lyrical

contents of the music were not the reason defendant was convicted of disorderly conduct.

Hearsay Statements.

Defendant argues the Law Division erred in admitting hearsay statements made by Ackles regarding statements made by her stepmother and his nephew. She argues the statements did not fall under any hearsay exception and the Law Division should have excluded the statements. However, the Law Division properly held the out-of-court identifications and purported hearsay were rendered moot by Ackles' in-court identification of defendant.

Moreover, the Law Division did not rely on these statements in its determination of defendant's guilt. The Law Division specifically addressed this issue in its decision:

> [T]he arguments made about his identification and what the mother said and the hearsay statements would be different if the only identification was out of court. In this case the real question . . . was the in-court identification proper and the [c]ourt finds that the . . . complaining witness' . . . in-court identification of the defendant as the one that committed an offense against him was proper, unequivocal. . . [T]here was no . . . doubt. . . . [H]e identified her . . . at least four times in the transcripts on Page 18, Page 28 and twice on Page 32.

Discovery Request.

Defendant states she did not receive relevant discovery she had requested before the municipal-court trial. Discovery requests must be made at the municipal level to be preserved for appeal. See State v. Stein, 225 N.J. 582, 599 (2016) ("declin[ing] to grant defendant a remedy that he did not seek at the appropriate time in the appropriate forum" because he "did not raise or preserve the [discovery] issue in the municipal court proceedings.") At the start of the municipal trial, defendant, appearing self-represented, stated she was missing discovery she had requested from the State. When the court asked what specific discovery she was missing, defendant responded she did not have a copy of "the name of the police officer" or "[a]ll the summons, citations, e[mails] from the police." Defendant did not make any motions to compel discovery.

Nonetheless, the record reflects she had the information she requested regarding the name of the reporting police officer. The name of the police officer was in the record and included in defendant's appendix under "Received Discovery Documents." The same documents, which contained the police officer's name, were referenced in defendant's brief submitted to the Law Division. Also, the municipal court informed defendant if she was "not satisfied with the discovery that [had] been provided [she could] file a motion to compel

discovery or ask [for] sanctions or ask for the matter to be dismissed," which defendant did not do. Before the Law Division, defendant did not make any motions for additional discovery or raise the issue of her alleged failure to receive discovery. Because defendant failed to raise the issue of incomplete discovery before the Law Division, we will not consider it for the first time on appeal. See Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn, 410 N.J. Super. 510, 539 (App. Div. 2009) ("We note that as the issue of lack of discovery was not presented to the trial court, we do not consider it on appeal."); Crusader Servicing Corp. v. Port Auth. of N.Y. and N.J., 386 N.J. Super. 494, 497 n.1 (App. Div. 2006) (rejecting appellant's argument "summary judgment was prematurely granted because discovery was incomplete" in part because appellant "never raised the issue of incomplete discovery" until the appeal).

Sufficient Credible Evidence in the Record.

Defendant further argues the record lacked sufficient credible evidence to convict her. Pursuant to N.J.S.A. 2C:33-2(a), "[a] person is guilty of a petty disorderly persons offense, if with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," the person either "[e]ngages in fighting or threatening, or in violent or tumultuous behavior" or "[c]reates a hazardous or physically dangerous condition by any act which

20

serves no legitimate purpose of the actor." The Law Division found, beyond a reasonable doubt, defendant had made "racially offensive and threatening remarks towards the victim, with the intent to annoy or alarm him" in violation of N.J.S.A. 2C:33(a)(1). The Law Division found defendant's words, "the way they were said, their context, and how they were directed at the victim all constitute[d] disorderly conduct." The Law Division held defendant had violated N.J.S.A. 2C:33-2(a) because her "behavior was disorderly and served no purpose except to alarm, annoy, intimidate, threaten, and harass the victim. She promised violence to the victim by threatening him in violation of the statute."

The Law Division came to this decision because it found Ackles' testimony credible, Mr. Lasisi's testimony of little value, and defendant's testimony not credible. Focusing on the four in-court identifications of defendant and the credibility of the complaining witness, the Law Division determined the State met its burden and found defendant guilty beyond a reasonable doubt. We discern no error in the Law Division's findings as there is sufficient credible evidence in the record to support defendant's conviction.

To the extent we have not addressed any of defendant's remaining arguments, we are satisfied they lack sufficient merit to warrant discussion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION